Rose Mund, Individually and as Executor of the Last Will and Testament of Sarah Kanner, Deceased, Plaintiff-Appellee, v. Mandel Friedman, et al., Individually and as Administrator of the Estate of Yoman Bernie Friedman, Deceased, Bernard Friedman, Darco, Inc., an Illinois Corporation, and Marguerite Betty Miller, Defendants, Mandel Friedman, Defendant-Appellant. The City of Springfield, an Illinois Municipal Corporation, Plaintiff-Appellee, v. Isadore K. Friedman, a/k/a I. Kanner Friedman, et al., Individually and as Executor of the Estate of Sarah Kanner, Deceased, Esther Friedman, et al., The First National Bank of Springfield, a Corporation, The Illinois National Bank of Springfield, et al., Defendants, Mandel Friedman and Esther Friedman, Defendants-Appellants.

Gen. No. 10,846.

Fourth District.

December 6, 1967.

Rehearing denied January 23, 1968.

 ██ 

Earl S. Hodges, of Springfield (Conrad Noll, Jr., of counsel), for appellants.

Graham & Graham, and Simon L. Friedman, of Springfield, for appellee.

PER CURIAM.

Sarah Kanner, a resident of Springfield, executed her Last Will and Testament on July 16, 1936, and thereafter, on May 29, 1940, and September 9, 1946, she executed codicils thereto. Following her death on November 9, 1947, her will and codicils were duly admitted to probate. On July 25, 1963, Rose Mund, a beneficiary, filed the instant complaint praying for the partition of certain premises described in the will. Mandel Friedman, a defendant, answered the complaint and filed a counterclaim seeking a construction and interpretation of said will and codicils. Replies were filed to the counterclaim, and on December 3, 1963, the cause was referred to the Master in Chancery. This order, however, was subsequently vacated, and the cause heard by the court, resulting in a decree to reverse which Mandel Friedman appeals.

Counsel for appellant states that the sole question presented to this court for consideration is the construction and interpretation of the last will of Sarah Kanner, particularly, paragraphs 6 to 14 inclusive and the paragraphs alluding thereto in the two codicils. These paragraphs are:

## "SIXTH

"I give, devise and bequeath to my beloved nephew, Simon Sweetman Friedman, the building known and

described as 803–805 East Jefferson Street, Springfield, Illinois, and the building known and described as 1130 South Sixth Street, Springfield, Illinois, to be his absolutely and forever.

## "SEVENTH

"I give, devise and bequeath to my beloved nephew, Archie Friedman, the building known and described as 721 East Washington Street, Springfield, Illinois; the building known and described as 1100–1104 East Jefferson Street, Springfield, Illinois; the building known and described as 118–120 North Eleventh Street, Springfield, Illinois, to be his absolutely and forever.

## "EIGHTH

"I give, devise and bequeath to my beloved nephew Mandel Friedman, the building and premises known and described as 731 East Washington Street, Springfield, Illinois, and extending from the lot line thereof, 157 feet north; the building known and described as 1912 West Grand Avenue South, Springfield, Illinois; the building known and described as 1237 North Second Street, Springfield, Illinois, to be his absolutely and forever.

## "NINTH

"I give, devise and bequeath to my beloved nephew, Bernard Friedman, the building and premises known and described as 727 East Washington Street, Springfield, Illinois, and extending from the lot line thereof, 157 feet north; the apartment building known and described as 509–511 North Sixth Street, Springfield, Illinois; Lot Sixteen (16), Block Eighteen (18) of Well's and Peck's Addition to the City of

Springfield, situated in the County of Sangamon, State of Illinois, to be his absolutely and forever.

## "TENTH

"I give, devise and bequeath to my beloved nephew, Jacob Rufus Friedman, the building and premises known and described as 729 East Washington Street, Springfield, Illinois, and extending from the lot line thereof, 157 feet north; the building known and described as 726 East Washington Street, Springfield, Illinois; the building known and described as 714 East Madison Street, Springfield, Illinois; the building known and described as 716 East Madison Street, Springfield, Illinois, the building known and described as 720 East Madison Street, Springfield, Illinois, and also the lot and ground 40 feet wide and 157 feet deep immediately to the west of the property hereinbefore described as 714 East Madison Street, Springfield, Illinois, to be his absolutely and forever.

## "ELEVENTH

"I give, devise and bequeath to my beloved nephew, Adolph Friedman, the building and premises known and described as 725 East Washington Street, Springfield, Illinois, and extending from the lot line thereof 157 feet north; the building known and described as 1921 South Seventh Street, Springfield, Illinois; the building known and described as 913 East Madison Street, Springfield, Illinois; the building known and described as 313 North Eleventh Street, Springfield, Illinois; the building known and described as 317 North Eleventh Street, Springfield, Illinois; also the second lot west of Eleventh Street, on the south side of Mason Street and being 40 feet by 157 feet, to be his absolutely and forever.

## "TWELFTH

"I give, devise and bequeath to my beloved niece, Marguerite Betty Miller, the building known and described as 400 West Allen Street, Springfield, Illinois; the building known and described as 419 North Sixth Street, Springfield, Illinois; the building known and described as 1125 East Carpenter Street, Springfield, Illinois; the building known and described as 1129 East Carpenter Street, Springfield, Illinois; the building known and described as 1000 East Mason Street, Springfield, Illinois; the building known and described as 324–326 North Tenth Street, Springfield, Illinois, to be hers absolutely and forever.

## "THIRTEENTH

"I give, devise and bequeath to my beloved niece, Rosie Mund, the building known and described as 415 North Sixth Street, Springfield, Illinois; the building known and described as 427 North Sixth Street, Springfield, Illinois; the earrings, diamonds and pin which I have been wearing, to be hers absolutely and forever.

## "FOURTEENTH

"I give, devise and bequeath to by beloved niece, Hannah Feir, the building known and described as 223 North Sixth Street, Springfield, Illinois; the building known and described as 419 North Seventh Street, Springfield, Illinois, to be hers absolutely and forever."

The codicil of May 29, 1940, after declaring it to be a codicil of her will of July 16, 1936, provided:

"WHEREAS, by the said Last Will and Testament, I gave, bequeathed and devised unto my beloved

nephews, Adolph Friedman, Bernard Friedman, Jacob Rufus Friedman and Mandel Friedman, respectively, the buildings and premises known and described respectively as 725 East Washington Street, 727 East Washington Street, 729 East Washington Street and 731 East Washington Street, Springfield, Illinois,

"AND, WHEREAS, to the north of the said buildings and premises so given, devised and bequeathed, there is a driveway and alley,

"AND, WHEREAS, it is my intention to preserve the said driveway and alley for the sole use and benefit of all of my said nephews and of all future owners thereof of said property hereinbefore mentioned.

"NOW, I do hereby give, devise and bequeath unto my said nephews, Adolph Friedman, Bernard Friedman, Jacob Rufus Friedman and Mandel Friedman, a perpetual easement over the said driveway and said alley to the north of the said premises in this said Codicil mentioned, for the sole use and benefit of them, my said nephews, Adolph Friedman, Bernard Friedman, Jacob Rufus Friedman and Mandel Friedman, and all future owners of said buildings and premises in this Codicil hereinbefore described."

The second codicil executed on September 9, 1946, provided:

"AND, WHEREAS, since the execution of my said Last Will and Testament, I have acquired additional real estate, to-wit: 117 North Sixth Street, Springfield, Illinois, now, I do hereby give and devise unto my said beloved nephew, Mandel Friedman, the said real estate, to-wit: 117 North Sixth Street, Springfield, Illinois, to be his absolutely and forever.

"AND, WHEREAS, by clause nineteenth (19th) of my said Last Will and Testament, I bequeathed and devised certain real estate and personal property, also the rest, residue and remainder of my estate, real, personal and mixed, to my beloved nephew, Simon Sweetman Friedman, in trust, for my said brother, Henry Isaac Friedman, now, I do hereby rescind and annul said bequest and devise, said bequests and devises mentioned in said Paragraph Nineteen (19) of my said Last Will and Testament, and I do hereby give, devise, and bequeath unto my said beloved niece, Rosie Mund, and my said beloved nephew, Mandel Friedman, all of said property, real, personal and mixed, and the rest, residue and remainder of my estate, real, personal and mixed, to be theirs, equally, share and share alike.

"AND, WHEREAS, by clause Ninth (9th) of my said Last Will and Testament, I gave, devised and bequeathed to my nephew, Mandel Friedman, the building and premises known and described as 731 East Washington Street, Springfield, Illinois, and extending from the lot line thereof, 157 feet north, now, I do give, devise and bequeath, in lieu thereof, merely the said building known and described as 731 East Washington Street, and the buildings known and described as 109, 111, 113, and 115 North Eighth Street, Springfield, Illinois, to be his absolutely and forever.

"AND, WHEREAS, in said Last Will and Testament, by clause Tenth (10th) thereof, I gave, devised and bequeathed to my beloved nephew, Bernard Friedman, the building and premises known and described as 727 East Washington Street, Springfield, Illinois, and extending from the lot line thereof, 157 feet north, now, I do give, devise and bequeath, in lieu

thereof, merely the said building known and described as 727 East Washington Street, Springfield, Illinois, to be his absolutely and forever.

"AND, WHEREAS, in my said Last Will and Testament, by clause Eleventh (11th) thereof, I gave, devised and bequeathed to my beloved nephew, Jacob Rufus Friedman, the building and premises known and described as 729 East Washington Street, Springfield, Illinois, and extending from the lot line thereof, 157 feet north, now, I do give, devise and bequeath, in lieu thereof, merely the said building known and described as 729 East Washington Street, Springfield, Illinois, to be his absolutely and forever.

"AND, WHEREAS, in my said Last Will and Testament, by clause Twelfth (12th) thereof, I gave, devised and bequeathed to my beloved nephew, Adolph Friedman, the building and premises known and described as 725 East Washington Street, Springfield, Illinois, and extending from the lot line thereof 157 feet north, now, I do give, devise and bequeath, in lieu thereof, merely the said building known and described as 725 East Washington Street, Springfield, Illinois, to be his absolutely and forever."

The Fifteenth, Sixteenth and Seventeenth Paragraphs of her will made money bequests to various named parties, and by the Eighteenth Paragraph the testator disposed of the remainder of her personal property.

By the Nineteenth (19th) Clause or Paragraph the testator gave, devised and bequeathed the building known and described as 723 East Washington Street, Springfield, Illinois, the apartment building known and described as 425 North Sixth Street, Springfield, Illinois, a one-eleventh part of the remainder of her personal estate mentioned in Paragraph Eighteen, and devised all the rest, residue and remainder of her estate, real, personal

and mixed, of whatever nature and wheresoever situated, to Simon Sweetman Friedman, her nephew, in trust with directions that the trustee pay the net income of the trust fund to her brother, Henry Isaac Friedman, so long as he shall live, and upon his death the trust would terminate.

Counsel for the respective parties agree that where the testator used the words "building and premises," the named donee acquired the building and the land upon which the structure rests.

It is the contention of appellant, (a) that where the words: "I give, devise and bequeath to . . . the building known and described as . . . ," followed by the street number, the testator intended to limit the gift to the building only, and did not include the land upon which the building stands; and (b) that by the Second Codicil the testator revoked the gifts of the designated buildings and premises to each of her four nephews, and limited her gift to each of them to the building only, at the designated street number, and that the land upon which the buildings stand passed by the residuary clause to other donees.

Counsel for appellant state that this will might have been drafted with more skill and precision, but that "it and the two codicils provide a complete but rather complicated plan for distributing the estate of Sarah Kanner." Counsel insist that this court should take into consideration the fact that this will and the two codicils were drafted by "an outstanding and capable attorney, who was able to use the correct terms to express the intent of the testator, and who, for years had been the testator's legal advisor." Counsel also insist that the intention of the testator is plainly expressed by the language employed, and that by giving the word "merely," and the phrases "the building," "the building and premises," and "in lieu thereof" their ordinary and well-understood meaning, the problem of resolving the intention of testator is relatively uncomplicated.

346

Counsel for appellee insist that wherever the testator used the word "devise" followed by the words "building known and described as," and identified the premises by number and street, concluding with the words "to be his absolutely and forever," she did not intend to limit her gift to the designated building but included the land upon which the building stood, and such additional land as is reasonably necessary for its enjoyment. Counsel insists that this construction is the only one which affords symmetry to the intent of the testator, and that common sense requires that the decree be affirmed.

36 ILP, Wills, § 282, states that "A devise of a building may carry with it land adjacent thereto and used in connection therewith," and cites in support thereof Fuller v. Fuller, 315 Ill 214, 146 NE 174. The Fuller case held that where a testator used the term "the Central Hotel," she intended to devise "not only the building and the ground upon which the hotel stood but also the parcel of land lying to the south thereof, which was used by testatrix, at the time of the making of the will, in connection with and as a part of the hotel property." The opinion in that case cited several cases from other jurisdictions, some of which we will hereafter refer to.

In Schoendienst v. Fink, 58 Ill App2d 203, 207 NE2d 325, the testator used this language:

> "I give and bequeath our home at 710 Fairfax Street in Carlyle, Illinois, to Scott Lodge No. 79 A F & A M of Carlyle, Illinois, and Carlyle Chapter Order of the Eastern Star 518 of Carlyle, Illinois, with all contents except money, stocks and bonds and other personal clothing."

Since the word "devise" was not used the executor sought a determination of whether the donees were given the fee to the real estate, or was the gift only of the home and contents, thus effecting a severance of the improve-

347

ments from the real estate. The court held that the named donees were the owners in fee of the real estate located at 710 Fairfax Street, as well as the building located thereon, together with its contents, except money, stocks, bonds and clothing. In its opinion the court cited Richman v. Meier, 213 Ill 507, 72 NE 1121, where it is said (pp 520–521) that the word "devise" is usually employed to denote a gift by will of real estate, or an interest therein; that the word "bequest" may mean any gift by will, whether it consists of personal or real property, and that the word "give" has the largest possible signification, and is applicable as well to real as personal estate. The court also cited Wilson v. Wilson, 261 Ill 174, 103 NE 743, where it is said that in construing wills, courts will give to the words employed the meaning intended by the testator without regard to its strict technical meaning.

Gilbert v. McCreary, 87 W Va 56, 104 SE 273, 12 ALR 1172, cited and referred to in Fuller v. Fuller, 315 Ill 214, 146 NE 174, held that a clause in a will which bequeathed property in the City of Parkersburg, West Virginia, referring to it as "the house and lot known as No. 114 Tenth Street," carried with it not only the house but also whatever land reasonably and necessarily belonged to it as a place of residence. In the course of its opinion the court said:

> "Although the lot is not numbered, and the number of the house is not a lot number, it clearly suffices for designation of the subject of the devise. The house is part of the property devised, and its designation in the will as 'No. 114 Tenth Street' constitutes an index or means by which it can be found and identified. A gift thereof, by such designation, carries with it whatever reasonably and necessarily belongs to it as a place of residence, including the ground on which it stands and such additional ground as has been de-

fined as belonging to it, by use thereof in connection with it. There are some decisions literally importing that the grant of a house, mill, barn or other structure carries only so much of the soil as it actually covers. Crawfordsville v. Boots, 76 Ind 32; Endsley v. State, 76 Ind 467; Allen v. Scott, 21 Pick (Mass) 25, 32 Am Dec 238; Bacon v. Bowdoin, 22 Pick (Mass) 401; Johnson v. Rayner, 6 Gray (Mass) 111. It is here suggested that these cases may stop short of full definition of the grants, because it was unnecessary to determine their extent. It met the requirements of the cases to say the grants carried land.

"The English cases construing wills leave no doubt that a devise of a house carries all the land necessary to full use and enjoyment thereof. The contrary has never been so much as suggested. More than was really necessary or required for convenience has been held to have passed by such a devise." (See annotation following the report of this case in 12 ALR beginning on page 1179.)

In Hartfield v. Pennsylvania Co. for Ins. on Lives and Granting Annuities, 89 NJ Eq 45, 103 A 804, the will of the testator directed that his wife

". . . be suffered and permitted to occupy and have the use of my house in Beverly and its contents for and during the full term of her natural life, . . ."

It appeared that testator first acquired a tract of land in Beverly fronting 80 feet on Jennings Street and extending easterly in depth 120 feet. Subsequently he acquired an adjacent tract of land in the shape of the letter L to the north and in the rear of the land first purchased. He erected a dwelling on the first tract, and in a proceeding to quiet title it was contended that the tract of land

349

secondly purchased did not pass by the quoted portion of the will. The court held that the land embraced within the boundaries of the two conveyances was used by the testator exclusively as a residence property, formed a part of his home, and passed by the devise. In the course of the opinion the court cited Lanning v. Sisters of St. Francis, 35 NJ Eq 392, which held that the following devise:

> "I will my house to . . . , No. 160 Rose street, Trenton, . . ."

was a devise of the land of testatrix on which the house stood, and all of the land adjacent to the house that had been used in connection with the house.

Whitney v. Olney, 3 Mason 280, 29 Fed Cas 1108, was an ejectment proceeding. In that case the will of Christopher C. Olney contained the clause:

> "Further it is my will, that my said sons, Christopher and Nathaniel, shall have and possess my two paper-mills, namely, the Rising Sun and the Brown George, so called; and I devise the same to them as tenants in common in equal shares during the times of their natural life, together with all the machinery and appurtenances to said mills at the time of my decease."

The will then provided that at the death of his sons with issue, then such issue should take in fee simple all the estate he had devised to his said sons. It was contended that a moiety of the buildings only passed, and that no part of the land under, or belonging to and used with the papermills passed by this devise. In holding otherwise, the court, speaking by Mr. Justice Story, said:

> "My opinion is, that by the devise of the mill and its appurtenances all the land under the mill, and necessary for the use of it, and commonly used with it,

350

passed to the devisees. . . . I do not proceed upon the ground, that the land was a mere appurtenance to the mill; but that it was parcel thereof. . . .

". . . I lay no stress whatsoever upon the words in the devise, 'with the appurtenances.' The land under the mill and adjacent thereto, so far as necessary to its use, and commonly used with it, passed by force of the word 'mill.' It is not necessary, in order to pass lands, that they should be specially designated by that name. A grant of a messuage conveys all the land within the curtilage thereof; so the grant of a house. Shep Touch 94; Com Dig 'Grant,' E 6.

". . . The good sense of the doctrine on this subject is, that under the grant of a thing, whatever is parcel of it, or of the essence of it, or necessary to its beneficial use and enjoyment, or in common intendment is included in it, passes to the grantee. In common sense and in legal interpretation, a mill does not mean merely the building in which the business is carried on, but includes the site, dam, and other things annexed to the freehold, necessary for its beneficial enjoyment."

In Marston v. Stickney, 58 NH 609, it was said that a grant or devise of a dwelling house will convey the buildings belonging to it, its curtilage, garden, orchard and the land on which the house is built, with reasonable limitations.

In Dudley v. Town of Milton, a Massachusetts case, reported in 176 Mass 167, 57 NE 355, it appeared that a mother devised to her daughter, ". . . the house in which she now lives, situated on Brook road, Milton, . . ." The court, in its opinion, said that these words were capable of a meaning wide enough to include a lot on the opposite side of the road, improved with a barn, as well as the house and lot where the daughter lived.

Counsel for appellant state that these cases "focus attention upon the use of the words *home, house, homestead* and *mill*," and insist that there is nothing said in the cases referred to which should persuade a court to conclude that the testator in the instant case, when she used the word "building" intended her donee to take the land upon which the building stood, or any land used in connection therewith.

A house, however, is a building and so is a mill, and under the authorities cited when it appears that land is occupied and improved by a building and the building is the subject of a devise, the fee in the land upon which the building stands passes to the donee unless it clearly appears that such was not the intention of the testator. In Bruen v. People, 206 Ill 417, 69 NE 24, it is said (at p 423) that a building is an edifice constructed for use, or convenience as a house, church or shop; that it must be permanent and designed for habitation of men or animals, or the shelter of property. Bouvier defines a building as an edifice for use in the position in which it is fixed; that every building is an accessory to the soil, and is, therefore, real estate and belongs to the owner of the soil.

The City of Crawfordsville v. Boots, 76 Ind 32, was a proceeding to enforce a lien for the price of materials furnished in connection with the construction of a building and it was contended that the notice of intention to hold a lien did not contain a sufficient description of the premises. It appeared that the notice contained this description:

> "A part of lot No. 110, as the same is designated on the original plat of the town, now city, of Crawfordsville, and the building situated thereon, lately erected, known as the City Building. . . ."

In its opinion the court, citing Endsley v. State, 76 Ind 467, and City of Crawfordsville v. Johnson, 51 Ind 397, said:

> "This we deem a sufficient description of so much of the lot as was covered by the building, which is sufficiently described. The conveyance of a building conveys the land under the building."

The author of the article on "Building," 12 CJS, beginning at page 378, says that the noun "building" is derived from the Anglo-Saxon "bold," meaning a dwelling; that the term is comprehensive, generic, and, in its use may be ambiguous, having no universal, inflexible meaning which will apply to all cases, but depending for its meaning upon the peculiar facts and circumstances of each particular case; that within its ordinary and legal signification the word includes the basement, walls, and all space within the walls and means an erection designed to stand more or less permanently and covering a space of land for use as a dwelling, storehouse, factory, shelter for beast, or some other useful purpose. The term "building" has been held equivalent to, or synonymous with, "house," "place," "premises," "residence," and "structure." The term is not always limited to the structure itself, but sometimes includes the land on which the building stands, and the land within the enclosure belonging to the building and appropriate to its use.

The gift of the buildings here was absolute and unlimited. If a severance was had, the building would become personal property, and the donee would be entitled to the use of the building as located, or to receive all rents or income arising therefrom, and could dispose of it as he pleased by bill of sale or will. The building could be maintained and kept in repair indefinitely and the result would be that the land upon which the several buildings stand would be useless to its owner as long as the build-

ing remains, and the donee of the land would receive no benefit from the gift of the testator.

In Ryan v. Allen, 120 Ill 648, 12 NE 65, at pp 652–653, it appeared that the codicil to the will of Elizabeth Allen contained this clause:

> "I give and bequeath to my step-son, Omar H. Allen, the use or rents accruing from my house, and one acre of land that the said house stands upon, after his father's decease, provided his father does not sell said property, which privilege I grant him, provided it is necessary for his maintenance. After the said Omar H. Allen's decease, the said house and land is to go to his nearest heirs."

The court held that Omar H. Allen took the fee, subject to the estate and power reserved in Nathan Allen, the father of Omar H. Allen. In the course of its opinion the court said:

> "A devise of the income for the use of the devisee, or of the rents and profits of land, 'is equivalent to a devise of the land itself, and will carry the legal as well as beneficial interest therein.' "

In Carpenter v. Van Olinder, 127 Ill 42, 19 NE 868, at p 52, it is said that:

> "A devise of the use of the land is equivalent to a devise of the land itself, and carries the legal as well as the beneficial interest therein."

In the instant case the gifts of the several buildings carried with each gift the use of the land upon which the building stood, and was equivalent to a devise of the land itself.

By the Eighth, Ninth, Tenth and Eleventh Paragraphs of her will the testator devised the building and premises at 725, 727, 729 and 731 East Washington Street to a

354

named nephew, and in each of these paragraphs she disposed of buildings at other designated locations. By her first codicil she referred to the devises of the East Washington Street premises, stating that to the north of said premises there was a driveway and alley, and by this codicil she created a perpetual easement over this driveway and alley for the sole benefit and use of her several donees, and the future owners of the buildings and premises so devised.

By the second codicil she disposed of after-acquired real estate located at 117 North Sixth Street, and rescinded a trust provision as set forth in the Nineteenth Paragraph of her will, and gave, devised and bequeathed to a named niece and nephew all the rest, residue and remainder of her estate, to be theirs equally, share and share alike. In this codicil the testator referred to the Ninth Clause of her will, and stated that by this clause she had given her nephew, Mandel Friedman, the building and premises known as 731 East Washington Street. The Ninth Clause of her will did not devise the building and premises known as 731 East Washington Street to Mandel Friedman, but devised the premises and building at 727 East Washington Street to Bernard Friedman. It was by the Eighth Clause of her will that she devised the building and premises at 731 East Washington Street to Mandel Friedman. A mistake was also made in her reference to the disposition she had made in designated clauses of the original will to the other premises, at 725, 727 and 729 East Washington Street. These mistakes, however, are not material. Following her reference to the fact that she had, by her will, given the building and premises known and described as 725, 727, 729 and 731 East Washington Street to her several named nephews, this codicil continues:

"Now, I do give, devise and bequeath in lieu thereof, merely the said building known and described as

355

731 East Washington Street, and the buildings known and described as 109, 111, 113 and 115 North Eighth Street, Springfield, Illinois to be his absolutely and forever."

The same language was employed with reference to the building and premises known and described as 725, 727 and 729 East Washington Street. The premises designated as 725, 727, 729 and 731 East Washington Street each have a 20 foot frontage on East Washington Street and extend north 157 feet. The building on each of these locations is 20 feet in width, fronting on East Washington Street, and extending north 60 feet. If the land was not devised, and the buildings only passed by virtue of the provisions of the second codicil, the donee of the building would only have an easement in the land upon which the buildings stand and would not take the unimproved area to the rear of each of these buildings or any easement therein but this area would pass under the residuary clause.

At 721 and 723 East Washington Street each lot has a 20 foot frontage on East Washington Street and extends north 157 feet and the buildings cover the entire premises. In disposing of these premises the word *building* was used as it was also employed in the codicil with reference to the disposition of the locations at 725, 727, 729 and 731 East Washington Street. In each instance, the devise of the building was absolute and unlimited and carried with it the land upon which the building stood as an incident to the devise and was equivalent to a devise of the land itself, and the land appurtenant thereto. The exclusive possession of the land was necessary to the enjoyment of the devise.

If, as insisted by counsel for appellant the devise to Mandel Friedman of the premises known and described as 731 East Washington Street as changed by the second codicil passed to him merely the building and not the land upon which the building stands, he also owns as a residu-

ary devisee, an undivided one-half of the land upon which this building stands as well as any land appurtenant thereto and used in connection therewith. This is also true of the premises at 109–115 North Eighth Street. It should also not be overlooked that in the first codicil the testator referred to the fact that by her will she had given her four named nephews the premises known and described as 725, 727, 729 and 731 East Washington Street. She then stated that to the north of these buildings and premises there is a driveway and alley and that it was her intention to preserve said driveway and alley for the sole use and benefit of all her nephews, and all future owners of this property and concluded by creating a perpetual easement over said driveway and alley for the sole benefit of the owners of said buildings and property. Inasmuch as there is an area of land lying between the north wall of the buildings erected at 725, 727, 729 and 731 East Washington Street and the north boundary line of these lots, the perpetual easement so created by the first codicil would be of no benefit to testator's nephews or future owners of the building on these designated lots, if the construction contended for by appellant prevailed.

■ ■ The cited authorities hold that when a testator devises a house, home or mill, the donee acquires the land upon which the house, home or mill stands, together with any land used in connection therewith. These holdings are persuasive here. The language used by the testator in the will or codicils, in view of the geography of the real estate involved and the results that would obtain, does not call for the severance of the buildings from the land upon which the buildings stand. The repeated use, by the testator, of the words *real estate, devise, absolutely* and *forever,* which she employed in connection with her gifts of numerous buildings at designated locations, supports the decree which found that by her will and codicils the testator intended to transfer to the several designated

devisees the land upon which the several buildings are located and the land appurtenant thereto and which is used in connection therewith.

The buildings here involved, at the time the will and codicils were drawn, were annexed permanently to the freehold, and in our opinion, the gift of the testator carried with it not only the land on which these buildings stand, but also such additional ground in connection therewith as is necessary for its complete use and enjoyment.

The decree appealed from will be affirmed.

Decree affirmed.

DOVE, J., sitting by assignment of the Supreme Court, CRAVEN, P. J. and SMITH, J., all concur.