Horace M. CLEVENGER et al.,
Plaintiffs-Respondents,

v.

Frank Joseph MUELLER et al.,
Defendants-Appellants.

No. 37434.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 1, 1977.

A. E. Nick, Ferguson, for defendants-appellants.

Dubinsky, Duggan & Horwitz, Sidney W. Horwitz, St. Louis, for plaintiffs-respondents.

1. Frank Joseph Mueller, Mrs. Viola Mueller Byrnes, Mrs. Marie V. Mueller, wife of George William Mueller, deceased, and Mrs. Kenneth M. Brandon. Frank, Viola and George are the children of Sebastian and Elizabeth Mueller, the original owners of the land. The identity of Mrs. Brandon is unclear since she was not mentioned in the record other than as a named defendant in the petition.

2. The petition upon which the order of the trial court was based described the strip as follows:
"Beginning at a point in the center line of Hudson Avenue or Road at the Northeast [Southwest?] corner of property conveyed to

SIMEONE, Chief Judge.

This is an appeal by the defendants-appellants[1] from a judgment of the circuit court in St. Louis County ordering that the fee simple title to a thirty-foot strip of land be vested in the plaintiffs-respondents, Horace M. Clevenger and Roberta W. Clevenger, his wife, and decreeing that the defendants-appellants have no "title, right, claim or interest" in the strip of land.

The facts are somewhat complicated and the legal issues difficult to resolve from the record before us. The action began as a suit to quiet title to a certain strip of land approximately 30 feet wide and 380 feet long located in Vogel's Subdivision, of Lots A, B and C of Jane Chambers Subdivision at Ferguson, St. Louis County. The petition to quiet title alleged that the plaintiffs—the Clevengers—were the owners of the strip of land "used as a roadway" and gave a legal description of the land.[2] The petition prayed that the court enter its order quieting title to the "roadway premises" against all claims and demands of defendants and those claiming under them or in their behalf. The petition was later amended to pray in the alternative for a "perpetual easement to said roadway" in the event the court found that the plaintiffs did not have title in fee simple.

In 1908, Sebastian and Elizabeth Mueller, the parents of Frank, Viola and George Mueller, acquired 19.20 acres of land known as Vogel's Subdivision, Lots A, B and C of Jane Chambers Subdivision. All of this property fronted on Hudson Road in St. Louis County. Sebastian and Elizabeth's

Frank J. Mueller and Florence Mueller, his wife, by deed recorded in Book 1665 Page 80 of the St. Louis County Records, thence North 3 degrees 38 minutes East 384.35 feet to an iron pipe; thence North 86 degrees 12 minutes East 30.25 feet to the Southwest [Northwest?] corner of property conveyed to Frank J. Mueller by deed recorded in Book 2904 Page 453; thence South 3 degrees 38 minutes West 394.10 [374.10?] feet more or less to the center line of Hudson Avenue or Road; thence along said center line North 75 degrees 42 minutes West 30 feet more or less to the point of beginning."

home was located toward the rear of the property, approximately 380 feet north of Hudson Road.

In 1939, Sebastian and Elizabeth deeded to each of their three children, Frank, Viola and George, a certain parcel of ground, not involved in this proceeding, which was approximately one acre each, and each fronting on Hudson Road.[3] After these gifts of one acre each, Sebastian and Elizabeth continued to reside in the house on their land.[4] Although there was some evidence that the original owners, Sebastian and Elizabeth, "used to circle around years ago through" another part of the property, there was evidence that the thirty-foot strip in dispute was used by them and later by their son, George, for "quite a few years." After the deeds were made giving these three one-acre parcels of land to each of the three children in 1939, there remained approximately 15.75 acres owned by Mr. and Mrs. Sebastain Mueller. Two houses rested on the land not deeded. Frank Mueller and his wife lived in one and Viola and her husband lived in the other. Mr. Sebastian Mueller died sometime prior to 1951, and his wife, Elizabeth, then owned the 15.75 acres. Elizabeth Mueller died on February 5, 1951. She left a will dated June 3, 1942, which was probated in the probate court of St. Louis County. By her will she "devised" and "bequeathed" to (1) Viola "the house [in which she was living] and the land upon which it is situated, with all the appurtenances thereto, . . ." (2) Frank Joseph Mueller "the house [in which he was living] and the land upon which it is situated, with all the appurtenances thereto, . . ." and (3) George William Mueller

"the house now occupied by me and the land upon which it is situated, with all the appurtenances thereto, and which house is constructed upon the 15.75 acres hereinafter described and devised." By her will, Item V(d), she also devised to each of the three children an undivided one-third interest in the 15.75 acres of the Jane Chambers Subdivision and "of all the lands I may die seized or possessed at my death." After the probate of the will in 1951, in June, 1952, the three children—Frank, Viola and George—voluntarily partitioned most, but not all, of the 15.75 acres among themselves.[5] By the partitioning, Viola and her husband acquired 1.6 acres fronting on Hudson Road,[6] Frank acquired approximately 1.50 acres, also fronting on Hudson Road,[7] and George acquired 3.632 acres located about 300 feet from Hudson Road and upon which the home of Sebastian and Elizabeth Mueller was located.[8]

After his mother's death, George Mueller lived in his mother's house for some seven years, or until the late fifties, and used, as did his parents before him, the thirty-foot strip.

Sometime in 1965, George William Mueller and his wife, Marie, sold the 3.632 acres which he acquired by partition and the house which he acquired by will from his mother and the one-acre lot which he acquired from his parents by gift in 1939 to one Eula D. Beck. George died on February 21, 1968. According to a stipulation filed by counsel, Eula D. Beck in 1969 sold the "two lots" which she acquired from George to the North County Church of God. Then, in 1971, the North County Church of

3. A diagram, Joint Exhibit # 1, is attached hereto as an exhibit which more graphically shows the various lots and the strip of land denominated as the roadway. Lots A, B and C in the diagram were deeded in 1939. Lot A (1095 Hudson) was deeded to Frank J. Mueller and Florence Mueller, his wife, but later sold by him; Lot B (1065 Hudson) was deeded to Viola Mueller and her husband, James A. Byrnes; and Lot C (1001 Hudson) was deeded to George William Mueller, then a single person.

4. The land and house is denominated as C-1 on the diagram on the appendix.

5. Some six plus or seven acres of the subdivision were not partitioned and form no part of this controversy.

6. This property is denominated B-1 on the attached appendix.

7. Shown as lot A-1 on the appendix.

8. Shown as lot C-1 on the appendix.

God sold the two pieces of real estate to Mark Twain State Bank. The bank had the house in which George had lived on the 3.632 acres torn down and removed. The bank did not remove the debris by taking it out over the thirty-foot strip or "roadway" but took it out over Viola's property at the western edge. Mark Twain in turn on March 21, 1972, sold the two pieces of property—the one-acre tract deeded to George in 1939 and the 3.632 acres partitioned to him—to the plaintiffs, Mr. and Mrs. Clevenger.[9] Mr. Clevenger testified that he "used" the thirty-foot strip now in dispute and "went back there with my car and trailer" until about November, 1972. He had no occasion to "go back until June of the next year" and when he did he found a chain across the strip which eventually precipitated this controversy between the Clevengers and the Muellers.

Trial of this quiet title proceeding was held in February, 1975, before the court without a jury. The above facts were brought out during the hearing. The plaintiffs' evidence consisted of the testimony of Horace Clevenger and Mr. Curtis Lentz, a real estate agent, and the defendants' evidence consisted of the testimony of Frank J. Mueller and his sister, Viola.

In his testimony, Mr. Clevenger testified that he purchased the two lots formerly owned by George—the one fronting on Hudson Road (Lot C) and the 3.632 acres (Lot C-1). He testified that before he purchased the property he "discussed the use" of the thirty-foot strip with Frank J. Mueller, who owned the property just east of the strip (Lot A-1) "[w]hen I was looking the property over before sale." According to Mr. Clevenger, although denied by Frank Mueller, he [Frank] "pointed out the drive and said 'This drive goes with it.'" After the chain was erected, he had a conversa-

tion with Frank Mueller who stated he "wanted to stop trespassers on his property, and said he had to stop everybody to keep them from coming back." Mr. Clevenger identified certain real property tax receipts for 1972, 1973 and 1974, which were paid by him on property which had an address at 1101 Hudson Road, which address appears "opposite the 30-foot roadway."[10] He testified his only access to his 3.632 acres from another lot was by "foot path" because it is a rough area containing a "ravine" 15–20 feet deep, and "because of the terrain and trees."

Mr. Clevenger admitted that the thirty-foot strip of land in dispute was never contained in the deed he received, but indicated that he had "used it." The earnest money contract with the Clevengers signed with Statler Realty included a "30 foot Easement from Hudson road North for a distance of approximately 384 feet, between two tracts owned by Frank J. Mueller and wife." But no deed to the thirty-foot strip was introduced and the evidence is clear and respondents'—Clevengers'—case indicated that the title to the thirty-foot strip was never formally vested in the plaintiffs-Clevengers.[11]

Frank Mueller testified that he and his wife lived in the house willed to him by his mother since 1936 and had lived on the original 19.20 acres most of his life. He testified that the thirty-foot strip lay between his two properties (A and A-1 on appendix) and that he acquired his tract of land which surrounded his house at the time of the partitioning in 1952. At the time of the partitioning of the three tracts of land (to Frank, Viola and George) they did not partition the thirty-foot strip nor the "six and some odd" acres to the rear of George's 3.632 acres. Frank Mueller denied meeting Mr. Clevenger and discussing the thirty-

---

9. The transaction was handled by Statler Realty for Vorhof-Duenke who was the agent for Mark Twain. The earnest money receipt for the 3.632 acres included a thirty-foot easement from Hudson Road north for a distance of about 384 feet between the two tracts owned by Frank J. Mueller and his wife.

10. The receipts showed that the acreage was 3.62 acres valued at $2,240.

11. Mr. Clevenger testified that the deed to the lots he purchased did not contain the description of the thirty-foot tract, but "that does not stop the use of the land."

foot tract; in fact, he stated "I didn't know Clevenger until after he bought the property. Never had met him." He testified that in March, 1972, Mr. Statler came to him and indicated he wanted a fifteen foot easement on the west side of his property "alongside of my house." [12] The "Easement Deed" attempting to grant a 15 foot easement on Frank's property was typed for the signatures of Frank and Florence Mueller but was never in fact executed. He testified that his sister, Viola, and his brother (George) had an "interest" in the strip. During Frank's testimony a paid real estate tax bill was introduced showing that taxes were paid on 7.26 acres with "no front," to which he contributed a third of the bill.[13] He "guessed" that he had possession of the strip. He did admit that the three children did not partition the strip here in dispute because they "neglected to do that." On cross-examination, he indicated that the strip or "roadway" was used for quite a few years by both his parents and by George when he lived in his mother's house. He never did see Eula Beck, the purchaser from George, use it, and he and his brother and sister never did partition the strip. He contended that the three children still own it. He admitted putting a chain across the "roadway," to keep the "motorcycles and horseback riders and people going back there, going over that strip, cutting my property up, my grass in the back."

Viola Mueller Byrnes also testified in the defendants' case. The gist of her testimony was that when the three children partitioned the various lots, it was their intention that the "30 foot [sic] was intended to go with Frank Mueller's property" and that it was still part of the estate.

The properties on which Viola and Frank live front Hudson Road and each has a driveway.

Mr. Curtis Lentz, a real estate agent, testified on behalf of the plaintiffs. He testified that in 1967 or 1968, Armbruster Real Estate had the "property" [14] (presumably the two pieces purchased by the Clevengers) and he went and talked to Mueller (presumably Frank) and Viola and a "sister [in law] on Warson Road in Overland, and got the listing on the property, four and some tenths acres." He indicated he discussed the thirty-foot strip with Frank Mueller and "he [Frank] walked me back the road and showed me the old house and the two-car concrete block garage." He testified that Frank told him the thirty-foot strip "went with the property. He showed me where it went."

Upon questioning of counsel by the court at the close of the evidence, it was developed and agreed to by counsel that (1) following the partitioning, George lived in the house located on the 3.632 acres, (2) while he lived there he used the thirty-foot strip of land as a means of ingress and egress, and (3) the deeds of partition by metes and bounds excluded the "roadway" and all the conveyances were "simply silent" as to the thirty-foot strip.

On July 1, 1975, the trial court entered its order vesting fee simple title to the thirty-foot strip of land in the plaintiffs, the Clevengers, and decreed that the Muellers and their successors have no interest in that parcel of land.

**12.** This was at or near the time the Clevengers bought the 3.632 acres—the sale was completed March 21, 1972.

**13.** 7.26 acres is more than the 6 plus acres that was not part of the partitioning by the three children. The contention is that hence the Muellers paid the taxes on the thirty-foot disputed strip. He contended that the tax bill showed that taxes were paid on seven acres which would consist of the six plus acres not partitioned and the thirty feet. He later testified that his sister paid the taxes on the thirty-foot strip.

**14.** It is wholly unclear as to which property Mr. Lentz is speaking of at the time he got the "listing" in 1967 or 1968; the property belonging to George had already been sold in 1965 to Eula Beck. Apparently he had a listing to sell the property that Mrs. Beck owned. But, if so, then there was no need to speak to Frank, Viola and George's wife about the listing. He attempted to explain this by saying "I don't know whether they redeemed it."

The defendants duly appealed.

On this appeal, the defendants-appellants contend that the trial court erred in vesting a fee simple title to the thirty-foot strip in the Clevengers because (1) "the record clearly shows that the record title to the property in dispute and the possession thereof were at all times in the defendants" and shows that the Clevengers had neither legal nor equitable title or possession to or of the thirty-foot strip of land, (2) the Clevengers failed in their burden to prove that the strip was inadvertently overlooked in the partitioning of the land to George Mueller, and (3) the plaintiffs failed to prove that the title was vested in the plaintiffs—the Clevengers.

The thrust of the appellants' argument is that the facts "simply" do not provide a reasonable basis for such a finding by the trial court giving the Clevengers fee simple title to the thirty-foot strip of land because the evidence adduced is clearly to the contrary.

The Clevengers—the respondents—really do not refute the contentions that they never in fact received a title or deed to the thirty-foot strip but rather contend that the trial court did not err in vesting fee simple title in them because "[a] devise of a house in which the testatrix [Elizabeth Mueller] resided, including the ground on which it is situated and [the] appurtenances thereto, carried with it such land as may be necessary for the enjoyment of the devisee [George] in the same manner that was used by the testatrix." [15]

They rely on numerous authorities which hold that a devise of a house carries with it the ground on which it stands and everything accessory thereto necessary for the beneficial enjoyment thereof, including land—the thirty-foot strip—used in connection with the house devised.

The resolution of the issue before us hinges upon whether Elizabeth Mueller, by her will devising to her son, George, the "house now occupied by me and the land upon which it is situated, with all the appurtenances thereto, . . ." also devised the thirty-foot strip of land so that, through George, the Clevengers received the fee simple title to that strip. In the resolution of this issue we are guided by the general principles relating to court-tried cases.

■ While we give due regard to the opportunity of the trial court to judge the credibility of the witnesses, and while we must reach our own independent conclusions, we are not to set aside the judgment unless (1) there is no substantial evidence to support it, (2) it is against the weight of the evidence, (3) it erroneously declares the law, or (4) it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). And since there were no findings of fact or conclusions of law made by the court, the judgment is to be affirmed if it can be sustained on any reasonable theory. *Lossing v. Shull*, 351 Mo. 342, 173 S.W.2d 1, 5 (1943).

■ We are guided by the principles relating to actions to quiet title. A suit to quiet title is a special statutory proceeding to adjudge the respective estates, titles and interests of the claimants to the disputed land. In such a proceeding the court must ascertain and determine the rights of the parties under the pleadings and the evidence and grant such relief as may be proper and determine the better title as between the parties to the proceeding, though the title superior to the rights of either party may be held by a stranger. The plaintiffs are required to show a title superior to the defendants although they are not required to show a title good against the whole world. The question is which of the contending parties has a better title. The claimants must prevail on the strength of their own title and not upon the weakness in the title of the other claimant. *Moise v.*

15. They contend that in construing such a devise, the trial court should endeavor to construe the will under the conditions and physical circumstances as they existed at the time the will was executed, and, since the evidence and physical facts clearly showed that Elizabeth intended that the thirty-foot roadway be appurtenant to the house she devised to her son, George, the trial court did not err.

*Robinson*, 533 S.W.2d 234, 240 (Mo.App. 1975) and cases cited therein.

■ The Clevengers, if they are to succeed, must sustain the burden of proving that the thirty-foot strip of land was actually devised to George as an incident to and necessary to the enjoyment of the "house . . . and the land upon which it is situated, with all the appurtenances thereto, . . . ." We agree with the Clevengers' contention that it is the intention of the testatrix at the time of execution which controls the construction of the will. *Whitelaw v. Rodney*, 212 Mo. 540, 111 S.W. 560, 561 (1908).

■ In devising real property no particular words are necessary to constitute a devise of real estate. ". . . Any words, however untechnical and informal, which clearly indicate an intention on the part of the testator to pass his interest in the real property possessed by him will be given that effect." 96 C.J.S. Wills § 761, p. 168 (1957).

Since the early days of the common law, innumerable authorities in the United States and England have held that a devise of a "house" or "dwelling house" carries with it not only the land on which it stands but also a certain amount of land necessary for the proper, convenient and beneficial enjoyment of the use of the "house" or property actually devised. Or, as sometimes said, such land used in connection therewith. The principle is summarized as follows:

"A number of cases have held that in the absence of evidence indicating a contrary intention, a devise of a 'building,' 'house,' or 'dwelling house,' passed, without further descriptive words, the land upon which the buildings stood, and, in addition, the land within the common inclosure belonging to the house and enjoyed with it." Annot., What Passes Under, And Is Included In, Devise of "Building," "House," or "Dwelling House," 29 A.L.R.3d 574, 576 (1970).[16]

In *Mund v. Friedman,* supra, after analyzing many of the decisions, the court stated that:

"The cited authorities hold that when a testator devises a house, home or mill, the donee acquires the land upon which the house, home or mill stands, together with any land used in connection therewith. . . ." *Mund v. Friedman,* supra, 232 N.E.2d at 767.

This principle is applicable whether or not the word "appurtenance" is used in the will.[17]

■ The precise issue in this proceeding is whether, by her will devising to her son, George, the "house [not home] now occupied by me and the land upon which it is situated with all appurtenances thereto, . ." Elizabeth also devised the fee simple title to the thirty-foot strip of land in dispute to George. The resolution of that issue depends upon the intention of the testatrix garnered from all the surrounding circumstances when she devised the house with all

**16.** See also the numerous authorities for the general principle collected in 57 Am.Jur., Wills, § 1356, pp. 899–900 (1948); Annot., What included in devise of "house," "dwelling house," or the like, 12 A.L.R. 1179 (1921); Annot., What passes under, and is included in, devise of "home" or "home place," 38 A.L.R.2d 840 (1954); Annot., 38 A.L.R.3d 1419 [Deeds] (1971); 96 C.J.S. Wills supra, § 761 at 170. In the United States it has been held that the word "house" is synonymous with "messuage" and conveys all within the curtilage, *Rogers v. Smith,* 4 Pa. 93 (1846), cited in Annot., supra, 12 A.L.R. at 1181; *Lombe v. Stoughton,* 17 Sim. 84, 60 Eng.Rep. 1059 (1849)—gardens, lawns, pleasure grounds and proper approaches; see *Gilbert v. McCreary,* 87 W.Va.

56, 104 S.E. 273, 12 A.L.R. 1172 (1920); *Mund v. Friedman,* 89 Ill.App.2d 338, 232 N.E.2d 757, 29 A.L.R.3d 560 (1968), [land on which building rests].

**17.** An "appurtenance" has usually been confined to incorporeal things such as easements or profits, hence, a conveyance "with appurtenances" does not ordinarily pass land other than that described. " 'Land cannot be appurtenant to land.' " Tiffany, Real Property, abridged edition, § 676, p. 695 (1940). "An 'appurtenance' may be defined as a thing belonging to another thing as principal and which passes as an incident to the principal thing." 23 Am.Jur.2d, Deeds, § 256, p. 293 (1965).

appurtenances.[18] Under all the circumstances we are of the opinion that the facts do not permit a construction that, in devising her house with all appurtenances to George, Elizabeth also intended to devise the disputed strip so as to vest in him fee simple title.

There is no doubt that the plaintiffs did not possess or acquire a deed by metes and bounds to the strip. The legal title to the strip has always been in and remained with the defendants and their parents. It is clear from the will that Elizabeth Mueller intended to convey and did in fact devise "to each of my children an undivided one-third interest" in the entire 15.75 acres and which is "the same land upon which the houses ˚. . . are erected, . . . ." By identical provisions Elizabeth also devised to each of the three children "the house [in which each was living] and the land upon which it is situated, with all the appurtenances thereto, . . . and which house is constructed upon the 15.75 acres. . . ." The will is not to be construed in a vacuum, and when viewed in light of the provision by which Elizabeth conveyed the entire 15.75 acres to Frank, Viola and George in one-third undivided interests, it becomes clear that Elizabeth did not intend to devise the thirty-foot strip as an incident to the "house" specifically devised to George Mueller.

To hold as respondents contend, that the fee simple title to the thirty-foot strip passed to George, may well mean that the contiguous land used for farming would also have passed to George because it was also used in connection with the house and was a necessary part of the farming operation and necessary for the enjoyment of the house. The exact same language was used by Elizabeth in the provisions of her will by which she devised to Frank and Viola the "houses" in which they were living. Consistency with respondents' contention that title to the thirty-foot strip of land passed with the devise of the "house" to George would require that we also find that Frank and Viola received title to all of the land that they used in connection with the operation and enjoyment of their "houses." Such conclusions would not be in harmony with the intention of the testatrix.

The fact that the thirty-foot strip was a necessary means of vehicular access to the house specifically devised to George does not compel a finding that the fee simple title to the strip was intended to pass with the house. Exclusive possession of the thirty-foot strip by George alone was not necessary to the enjoyment of the devise. Use of the strip as a means of access was secured by George's receipt of a one-third undivided interest in all of the 15.75 acres. George's continued use of the thirty-foot strip here in dispute for approximately seven years after the partitioning is not inconsistent with the theory that George owned a one-third undivided interest in the strip.

The three Mueller children were devised an "undivided one-third interest" in the 15.75 acres of land. This included the parcels partitioned, the seven acres not partitioned and the thirty-foot strip here in dispute. Although the strip of land was "used" by Sebastian and Elizabeth and later by George, the plaintiffs did not carry their burden of proof to show that the "title" to the strip vested in them, superior to that of the Muellers. In their evidence there is no showing whatsoever that they have title to the strip by any deed. The testimony of Mr. Clevenger only shows that he pur-

18. In *Eliot v. Carter*, 12 Pick. 436 (Mass.Sup. 1832), a testator devised to each of his daughters a "dwelling house" which faced an open courtyard lying between them and testator's mansion house. Two of the houses had no access except across the courtyard. The issue was whether in devising to each of his daughters a house he also intended to devise the fee to the courtyard. The court held that the daughters did not take a fee, but that the fee remained with the testator. The basis for the decision was that it was the "intention of the testator to devise an easement and not a fee." The issue in *Eliot* was whether the testator in devising the dwelling house to his daughters also devised the courtyard in fee not whether the testator in devising the mansion house also devised the courtyard in fee. The issue here is whether Elizabeth in devising her house to George also devised the thirty-foot strip. *Eliot* emphasized the intention of the testator based on the facts. We do likewise.

chased the two pieces of property and discussed the use of the strip with Frank and that he paid taxes on the property *located* at 1101 Hudson Road. It is of significance that at or near the time the Clevengers purchased George's 3.632 acres the real estate dealer sought a 15-foot easement on Frank's property adjacent to the disputed strip. But it is of no significance that taxes may have been paid. The mere payment of taxes does not create title. *Moise v. Robinson,* supra, 533 S.W.2d at 242. There is no showing by plaintiffs that legal title vests in them. Their whole case rises or falls on the interpretation of Elizabeth's will devising her house and appurtenances, and we believe that under the circumstances Elizabeth did not devise anything other than the house and the land on which it was built to George. There was no evidence to show that Elizabeth intended anything other than to give all of the remaining land including the strip in dispute to the three children and to hold an undivided one-third interest therein. Under her will each of the children had the right to use the strip. None had exclusive rights to this parcel of land.

We hold, therefore, that under this record in devising her house and the appurtenances [19] to George, Elizabeth Mueller did not at the same time devise to George the strip of land in dispute.

The plaintiffs, in our opinion, under the principles relating to quiet title actions, have failed to show a "title" superior to the defendants. We therefore reverse the judgment of the trial court granting the fee simple title to the plaintiffs because the judgment is not supported by substantial evidence and is against the weight of the evidence.

However, in the posture of this case, we remand the cause for a new trial. The theory of the plaintiffs' case on this appeal was that they were entitled to fee simple ownership of the thirty-foot strip. Their amended petition prayed in the alternative that an easement be declared. The evidence adduced on this record does not establish that in no event could the plaintiffs make a case against the appellants. Hence, under well settled rules of appellate practice, the cause should be remanded for further proceedings. *North Cty. Sch. Dist. v. Fidelity & Deposit Co.,* 539 S.W.2d 469, 478 (Mo.App.1976). On remand the plaintiffs may well be able to show another theory or a way of necessity—an easement which the law implies for access. *McDougall v. Castelli,* 501 S.W.2d 855, 858–859 (Mo.App. 1973); *Hill v. Kennoy,* 522 S.W.2d 775, 777 (Mo. banc 1975). The evidence of the plaintiffs indicated that there exists a ravine, 10–20 feet deep, on property fronting on Hudson Road (Lot C) which is contiguous with the 3.632 acres in the rear and which they also own.

Under all the circumstances of this case we are compelled to conclude that the plaintiffs, the Clevengers, are not entitled to a fee simple title to this disputed thirty-foot strip of land and that the fee simple title to this strip rests in the defendants, the Muellers, but we reverse and remand the cause to provide the plaintiffs an opportunity to prove, under a proper legal theory, that they are entitled to access from their property.

We have read the transcript, examined all the exhibits, read the briefs of the parties and all the authorities relied upon therein and conclude that the cause should be reversed and remanded for further proceedings.

The judgment is reversed and the cause remanded.

KELLY and GUNN, JJ., concur.

Appendix to follow.

19. The will used the same language "appurtenances" as to all three children.