BANK OF BRITISH NORTH AMERICA *v.* MILLER and others.

(*Circuit Court, D. Oregon.*   April 6, 1881.)

**1. APPURTENANCE.**

A water right, granted in gross, does not become technically appurtenant to land and a mill upon and for which it is subsequently used by the grantee thereof; but where such water-power is taken and applied to run a mill belonging to the owner of the power, and afterwards, while the water-power is so being used, the owner conveys the premises by metes and bounds without mentioning the water right, the right may pass therewith, as parcel thereof, if such appears to have been the intention of the parties.

**2. WATER-POWER NOT APPURTENANT, WHEN PASSES WITH LAND.**

In 1864 a water right was granted by the owner of the basin at Oregon City, in gross; and in 1866 the same was taken and applied to the use of a paper mill and machine shop on block 2, in said town; and in 1867, the same being the property of the owners of the water-power, they converted it into a flour mill and applied such water-power to the use thereof, continuously and exclusively, until 1878, when the owner of the mill and power conveyed the mill, describing the property by metes and bounds only, and without any express mention of said water right, to secure a loan of $20,000, payable in two years, with interest at the rate of 1 per cent. per month; the said property, including said water right, being then worth not to exceed $25,000, of which sum the water right was worth one-third. *Held,* that, upon the facts and circumstances of the case, it satisfactorily appeared that it was the intention of the parties that the water right should pass with the land and mill; and, being then used in connection therewith, it did so pass as parcel thereof.

In Equity.   Suit to enforce the lien of a mortgage.

*Ellis G. Hughes,* for plaintiff.

*W. Carey Johnson* and *William Strong,* for defendant Apperson.

DEADY, D. J.   On April 13, 1878, James D. Miller and wife conveyed the following-described property to John T. Apperson, as the executor of the will of George La Rocque, to secure the payment of the promissory note of said Miller, of the same date, for the sum of $20,000, with interest at 1 per centum per month, payable to said Apperson, or order, on or before two years after date, to wit: lots 5 and 6, in block 2, in Oregon City, Oregon; and also a portion of lots

7 and 8 in said block, constituting a parallelogram, bounded on the west by the western line of said lots, and 40 feet in width, and also a rectangle triangular portion of the remainder of said lot 7, situate in the south-west corner thereof, and having a west line of 30 feet and a south one of 16 feet in length; *habendum*, "to have and to hold the said premises and appurtenances."

The mortgage also contained an agreement that Miller would keep the "buildings" on the premises insured at $20,000, and if he failed to do so the mortgagee might foreclose, or procure said insurance and tack the expense thereof to his mortgage. On January 2, 1880, the mortgage aforesaid being in full force and only $3,000 interest paid thereon, said Miller and wife conveyed the lots and portions of lots aforesaid to Oliver C. Yocum, to secure the payment of the promissory note of said Miller of December 31, 1879, for the sum of $11,500, with interest at the rate of 1 per centum per month, payable to said Yocum or order one day after date; and also the water-right formerly conveyed to the Oregon Paper Manufacturing Company by George Marshall, John H. Moore, and Samuel L. Stevens, by deed of June 8, 1866, to-wit: the perpetual right to take 300 inches of the water which flows from the channel of the Wallamet river, east of Abernethy's island, into the basin of Daniel Harvey, on his mill reserve, on the Oregon City claim, under an average head of eight feet in said basin at low water, together with the right of way across the land of said Harvey for a race to carry said water from the north line of said basin to the south end of Main street in said city; said right and easement being particularly described in a deed executed by said Harvey, Moore, Marshall, Stevens, aforesaid, and Joseph Switzler, on August 9, 1864, which note and mortgage were, on January 3, 1880, in consideration of $11,500, duly transferred to the Bank of British North America.

On April 1, 1880, the plaintiff commenced this suit upon said note and mortgage, making said Miller and wife and Apperson defendants therein, and admitting in its bill the

existence and priority of the mortgage to Apperson, but claiming that such mortgage does not include the water right and easement aforesaid, and praying a sale of the premises and a distribution of the proceeds according to such admission and claim. On June 18th the bill was taken for confessed as against Miller and wife. On May 3d the defendant Apperson answered, alleging that at the date of his mortgage and long before, the defendant Miller was the owner in fee of the real property described in the mortgage, and also of the easement and water right aforesaid; that there was a grist mill and warehouse and other tenements upon said property, used by said Miller and his grantors for the manufacture, storage, and shipment of flour, wheat, and mill offal; that at the date of said mortgage, and long before, the said Miller and his grantors had annexed and made appurtenant to said lots said easement and water right, and used the same to propel the machinery of said mill and warehouse; and that they are included in his mortgage. On August 2d the defendant Apperson filed a cross-bill stating therein the facts contained in his answer, and praying for a sale of the premises, including the easement and water right, and that the proceeds be first applied to the payment of his debt and costs of suit.

The plaintiff answered the cross-bill, denying that the easement and water right were included in the defendants' mortgage. Replications to the answers to the bill and cross-bill were filed, and testimony taken upon the point in issue. The case was argued and submitted upon the pleadings, evidence, and a stipulation as to the facts concerning the origin and ownership of the easement and water right up to the date of the defendants' mortgage. From this stipulation it appears that the easement and water right aforesaid were created and vested in Moore, Marshall, Stevens, and Switzler, aforesaid, by the deed of Daniel Harvey and Eloisa, his wife, dated August 9, 1864,—the two-fifths thereof to said Moore, and one-fifth thereof to each of the other of said grantees,— upon sundry conditions as to the use thereof not material to this controversy; that at the date of such conveyance said

water right was in no way connected with or appurtenant to any real property owned by said grantees, or that described in the mortgages to the plaintiff or defendant Apperson; that on August 10, 1864, said grantees acquired said lot 8 as tenants in common, in the same proportion as they owned the water right; that on March 8, 1865, said Moore, Marshall, Stevens, and the heirs of said Switzler, then deceased, acquired said lots 5 and 6 in the same proportion, and on June 7, 1866, the successors in interest of said Switzler conveyed to said Moore, Marshall, and Stevens the undivided one-fifth of said lots 5, 6, and 8, and water right and easement; that on June 8, 1866, said Moore, Marshall, and Stevens conveyed to the Oregon City Paper Manufacturing Company said lot 5, and the undivided half of said easement and water right, reserving six feet and four inches in width along the easterly side of said lot, and within the walls of the building then being built thereon, on which to construct a flume or penstock, for the purpose of conveying water for the equal use of the parties in said deed and their assigns, and also a strip of land two feet and six inches in width on either side of the northerly line of said lot 5, to be used by said parties and their assigns as a tail-race; that on March 4, 1868, said Oregon City Paper Manufacturing Company conveyed its interest as aforesaid in said lot 5, and easement and water right, to A. I. Block; that on August 22, 1868, said Marshall conveyed to said Moore the undivided one-fourth of said lots 6, 7, and 8, and also the undivided one-eighth of said easement and water right; that on June 26, 1869, said Stevens conveyed to said Moore the undivided one-fourth of said lots 6, 7, and 8, and the undivided one-eighth of said easement and water right; that on September 7, 1868, said Block conveyed said lot 5, and the undivided half of said easement and water-power, to the defendant Miller, C. P. Church, and said Marshall,—one-half to said Miller, and one-fourth to said Church and Marshall each; and on September 4, 1876, said Marshall conveyed to said Church the undivided one-fourth of said lot 5, together with the "tenements, hereditaments, and appur-

tenances," without any special mention of water rights; that on November 17, 1876, said Moore conveyed to said Miller and Church said lot 6, and the portions of said lots 7 and 8 above described, and the undivided one-half of said easement and water right; and that on April 9, 1878, said Church conveyed to said Miller the undivided one-half of said lots 5 and 6, and said portions of said lots 7 and 8, "together with all the mills, buildings, warehouses, water rights, and privileges and easements thereon or appurtenant thereto."

In the conveyances of August 22, 1868, and June 26, 1869 the interest in the water right was the subject of a separate conveyance; and in all other conveyances of any interest in said water-right, in conjunction or simultaneous with any interest in said lots or either of them, the same was made by one instrument, containing, however, a special description thereof, except as otherwise appears from the foregoing statement.

It also appears from the evidence that at and before 1867 the water in question was conducted from the basin in an under-ground flume, on Main and Third streets, to the lots in question, under an ordinance of the city allowing the use of such streets for such purposes, and after being used thereon was discharged through a tail race into the Wallamet river; that said water was brought to lot 5, and about the half of it used to run a paper mill thereon, and 18 or 20 inches more in a machine shop on said lot 6, belonging to said Moore; that in 1867 said paper mill was converted into a flour mill, and has been so used ever since; that since before 1876 all of said water-power was used to run said mill and machinery, and has never been used otherwise nor elsewhere than as above stated; that at and before the date of the mortgage to Apperson the mill contained five run of stones, with the necessary machinery; that there was upon the premises, and used in connection with the mill, a wharf and warehouse, and an elevator for lifting wheat from the river; that the water-power is worth one-third of the value of the site, the improvements thereon, and the power; that there is a large surplus

of water in the basin from which this is obtained, but whether it can be purchased, and if so upon what terms, does not appear; and that the property, including the water right, was on August 9, 1880, sold by the master of this court upon an interlocutory decree to the defendant Apperson and W. Carey Johnson for the sum of $22,000.

Upon the argument the learned counsel for the plaintiffs cited and commented upon many cases, touching the question of what privileges, rights, and easements are or may be appurtenant to land, and will therefore pass to the grantee of the latter without being named in the conveyance thereof, and what are not so appurtenant. It is admitted that the water right in question is not "appurtenant" to the land in question, in the technical sense of that term, so that it could not exist separate and apart from it, and would pass with it, without mention or special agreement to that effect.

This water right was created and existed as a substantive and independent right, in gross, before the acquisition by the owners thereof of the lots mentioned in the mortgages. It was an easement without any fixed or limited dominant estate—whatever property it might be used with or upon being such estate for the time being; and although it has since been taken to said lots, and there applied to run a mill and machinery thereon, and thereby become, so to speak, in fact appurtenant to such property, still it may be again separated therefrom and taken and applied elsewhere. The water right was granted without any restriction or limitation as to the nature or place of its use, and therefore the power may be applied as and where the circumstances will permit, and such application may be changed from time to time, both as to use and place, at the pleasure of the owner. *Hart* v. *Curtis*, 7 Met. 94; *Linthicum* v. *Ray*, 9 Wall. 242; *Ackroyd* v. *Smith*, 16 Com. Bench, 184; *De Witt* v. *Harvey*, 4 Gray, 487; *Garrison* v. *Rudd*, 19 Ill. 558; *Goodrich* v. *Burbank*, 12 Allen, 459.

It is also clear that a sale of any real property carries with it any easement or privilege which is necessary to its enjoy-

ment, and at the time is in use thereon and therewith, as an appurtenance in fact, although not technically so at law, and this upon the presumption, more or less cogent according to the circumstances, that it was the intention of the parties to the agreement of sale that it should pass with the property to which it was then apparently subservient. *Nicholas* v. *Chamberlain,* 3 Cro. 121; *Whitney* v. *Olney,* 3 Mas. 280; *U. S.* v. *Appleton,* 1 Sum. 500; *Thayer* v. *Payne,* 2 Cush. 327; *Strickler* v. *Todd,* 1 S. & R. 63, (13 Am. Dec. 549;) *Coolidge* v. *Hager,* 43 Ver. 9, (5 Am. Rep. 256;) *Sheets* v. *Selden,* 2 Wall. 186.

In such a case the question is simply as to the intention of the parties to be gathered from the terms of the conveyance, the subject-matter, and its use and situation at the time of the sale, or as was said by Mr. Justice Story in *U. S.* v. *Appleton,* *supra:* "In the construction of grants the court ought to take into consideration the circumstances attendant upon the transaction, the particular situation of the parties, the state of the country, and the state of the thing granted, for the purpose of ascertaining the intention of the parties. In truth, every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for." In this case it was held that the vendees of the wings of a building were entitled, as against a prior vendee of the central part thereof, to the use of the windows and doors opening on to the front porch of the latter, not because such right was technically appurtenant thereto, but because such porch was so used at the time of the sale of the wings.

In *Sheets* v. *Selden,* *supra,* it was held on the same principle, in the language of the syllabus, that upon the sale of a division of a canal belonging to the state of Indiana, " 'including its banks, margins, tow-paths, side cuts, feeders, basins, right of way, dams, water-power, structures, and all the appurtenances thereunto belonging,' certain adjoining parcels of land belonging to the grantor, which were necessary to the use of the canal and water-power, and were used with it at the time, but which could not be included in any of the terms above, passed by the conveyance."

In *Lampman* v. *Milks*, it was held, when the owner of land across which flows a stream diverts the course of the latter, so as to relieve a portion of the tract from overflow, which he then sells, that neither he nor his grantees of the residue of the property can return the stream to its former bed to the damage of the first grantee. And in *Coolidge* v. *Hagar*, *supra*, it was held that the conveyance of a house and land by an ordinary warranty deed carried with it, by implication, the right which the grantor then had to water conveyed to the premises by means of an aqueduct from a distant spring.

This doctrine has been very strongly applied in the case of the grant of a mill messuage, or house, *eo nomine*. In the former case it has been decided that the grant will carry with it a parcel of land adjoining the mill, and used in connection with it, as well as that upon which it stands; and also the right to the water from a particular creek owned by the grantor, and then used to run the mill.

In *Whitney* v. *Olney*, *supra*, it was held that land adjacent to and commonly used with a "mill," although not technically appurtenant thereto, passed by a devise thereof, upon the ground that its use made it "parcel of the mill," and therefore it was presumed that it was intended to be comprehended within the term "mill," and devised by it. See, also, *U. S.* v. *Appleton*, *supra*, where Mr. Justice Story, in illustrating the proposition that upon the grant of a house it is implied from the nature of the grant, unless provision is made to the contrary, that the grantee shall possess the house in the manner and with the beneficial rights as were then in use and belonging to it, said: "It is strictly a question what passes by the grant. Thus, if a man sells a mill, which at the time has a particular stream of water flowing to it, the right to the water passes as an appurtenance, although the grantor was, at the time of the grant, the owner of all the stream above and below the mill. And it will make no difference that the mill was once another person's, and that the adverse right to use the stream had been acquired by the former owner, and might have been afterwards extinguished

by unity of possession in the grantor. The law gives a reasonable intendment in all such cases to the grant, and passes with the property all those easements and privileges which at the time belong to it, and are in use as appurtenances."

Upon these authorities, as well as the reason of the case, in my judgment, the conveyance to the defendant Apperson of the premises by metes and bounds, under the circumstances, passed the water right then owned by the grantor, Miller, and used in and upon the premises for any beneficial purpose.

It is admitted by the counsel for the plaintiff that if the conveyance to Apperson had described the premises as a "mill," the water-power then used to run it would have passed with it to the grantee. But the conveyance was in fact of a mill—a mill was the actual subject of the sale and conveyance, the thing which the parties dealt with and for—and it is not apparent why the mere difference in the mode of description of the property should make any such difference in the effect or result of the conveyance.

But, independent of this consideration, it is apparent from the circumstances that it was the intention of the parties to mortgage the water-power as well as the land and buildings thereon; because—(1) It was then in use upon the premises to run the mill and machinery then in active operation, and had never been used elsewhere, and must, in the nature of things, have been regarded as one property; (2) it was an apparent and continuous easement in actual use upon and for the benefit of the premises described in the mortgage, and gave them at least one-third of their value and probably much more of their salableness; and, (3) without it the premises were not a sufficient security for the money loaned upon them.

And therefore, although this water-power is not nor never was technically appurtenant to this land or mill, so that it could not exist separately from them, and would pass by operation of law with a conveyance of them, independent of the intention of the parties, still, at the date of the defendant's mortgage it was in fact appurtenant to the prem-

ises, and might pass with a conveyance of them, although not specially mentioned or described therein, if such was the intention of the parties, of which I think there can be no doubt.

The controversy between the plaintiff and defendant concerning the right to this water is purely a legal one. The former has no claim to any superior equity or merit over the latter. It was not misled by the terms of the defendants' mortgage to give credit to any one upon the supposition that Miller still owned the water-power unaffected by the mortgage to Apperson, but having an unsecured debt against Miller or Yocum, or both, it took this mortgage for what might be made out of the property as against the defendant Apperson.

The decision of the court will be that the plaintiff recover of the defendant Miller the sum of $11,500, with interest thereon from January 2, 1880, and that the defendant Apperson recover of said defendant the sum of $20,000, with interest thereon from October 13, 1879; that the lien of the mortgage of said Apperson extends to the water-power, as well as the lots and improvements thereon; and that the amount due said Apperson be first paid from the proceeds of the sale of said premises, together with the legal costs and expenses incurred by him in this suit; and that the balance, if any, be applied upon the debt due the plaintiff; and that the lien of both said mortgages be held satisfied, and the purchaser of the premises take the same discharged therefrom.