Jennie DIMOND, formerly Jennie Brower, William Brower, William C. Brower, Marian Brower Ballas, Appellants,

v.

Elizabeth KELLY, Flora Kalbargh, formerly Flora Brower and also known as Flora Loveridge, Thomas Brower a/k/a Thomas P. Brower, David Brower a/k/a David Brower, Sr., Robert Brower a/k/a Robert Brower, Sr., Maria Brower Ahgeak, formerly Maria Brower, Sadie Brower Neakok, formerly Sadie Brower, Kate Sakeagak, formerly Kate Brower, Arnold Brower a/k/a Arnold Brower, Sr., Harry Brower a/k/a Harry Brower, Sr., Mary Brower, Mary A. Stotts, Nancy Stotts, The unknown heirs or devisees of the aforesaid individuals, if any of the said individuals is deceased, Unknown claimants as to any right, title or interest in the subject property of this complaint, Appellees.

No. 4958.

Supreme Court of Alaska.

June 5, 1981.

As Amended July 17, 1981.

Terri-Lynn Coons and Ernest Z. Rehbock, Rehbock & Rehbock, Anchorage, for appellants.

Charles K. Cranston, Cranston, Walters, Dahl & Jerrell, Anchorage, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and BRYNER, Chief Judge, Court of Appeals.

## OPINION

CONNOR, Justice.

This appeal presents a dispute between the heirs of Charles D. Brower, who died testate on February 11, 1945, and was survived by fourteen children. Appellants are the heirs living outside Alaska. They challenge the superior court's determination of their rights and interests in a parcel of land known as U. S. Survey 1432, located at Barrow, Alaska. Charles Brower's will and codicil granted appellants a remainder interest in the parcel, while granting appellees both life estates and a share of the fee remainder.[1] The central question presented is whether the entire area of U. S. Survey 1432 was within Charles Brower's estate and thus subject to distribution; resolving that determines the amount of land in which appellants hold a remainder interest. A subsidiary issue is whether appellants, as holders of remainder interests, can maintain an action for a partition of the remainder.

Based on motions for partial summary judgment and after trial, the superior court concluded that appellants hold remainder interests in fee, to follow appellees' life estates, only in: (a) the portion of U. S. Survey 1432, lying north of a private road,[2] upon which the family residence of Charles Brower is located; and, (b) the entire portion of U. S. Survey 1432 lying south of the private road.

This disposition was based on findings by the superior court that Charles D. Brower conveyed, in two 1943 deeds, nearly all of the northern portion of U. S. Survey 1432 to

---

1. Charles D. Brower's will, dated November 1, 1937, provided as follows for the residue of his estate, which is asserted to include U. S. Survey 1432:

"... I give, bequeath, and devise said property to my children, to wit: MRS. ELIZABETH KELLY and FLORA BROWER, JAMES F. BROWER, WILLIAM BROWER, THOMAS BROWER, DAVID BROWER, JENNIE BROWER, ROBERT BROWER, MARIA BROWER, SADIE BROWER, KATE BROWER, ARNOLD BROWER, HARRY BROWER and MARY BROWER, share and share alike, or to the issue of any of my said children who may predecease me by right of representation per stirpes."

Thereafter, by codicil dated May 27, 1943, Charles Brower specified that U. S. Survey 1432

"be kept intact, undivided and inalienable for the use as a homesite for certain of my children whose names follow for as long as they live. Thomas, David, Arnold, Harry, Robert, Kate, Sadie, Maria, and Mary." [I. e., those heirs living around Barrow]

On October 5, 1948, the probate court for the Barrow Precinct, Territory of Alaska, entered an order of distribution closing the estate. Among other things the order directed:

"To Thomas, David, Arnold, Harry, Robert, Kate and Maria Brower, Sadie Brower Neakak (sic), and Maria Brower Ahgeak:

The realty known as U. S. Survey 1432 with the improvements, excluding house and furnishings, in life estate undivided and inalienable as a homesite, for so long as any live." [R. 248]

The probate court further decreed that the remainder interest in said property passed to all fourteen children.

Thomas P. Brower, appellee, has acquired the remainder interest of Mrs. Elizabeth Kelly and Flora Brower in U. S. Survey 1432. Appellants are Jennie Brower, now Jennie Dimond, William Brower, and the children of deceased James F. Brower (William C. Brower and Marian Brower Ballas).

2. A large map of U. S. Survey 1432, showing this road, was relied on at trial as Exhibit 37.

his sons Thomas P. and David Brower. Thus, it concluded, that portion was not within Charles Brower's estate when it was distributed. In addition, the superior court held that appellants, as remaindermen, have no right of partition because they hold no present possessory interest.

The superior court's interpretation of the 1943 deeds and the October 5, 1948, probate decree is best understood in light of certain events occurring before Charles Brower's death. Prior to July, 1943, Charles Brower was a partner with a San Francisco company in a whaling and trading business that used all of U. S. Survey 1432 for its operations. Sometime before July 1, 1943, Charles Brower terminated this partnership and substantially ceased the commercial whaling business. From that time until July 1, 1943, Charles Brower ran a general merchandise business in Barrow known as Cape Smythe Whaling and Trading Co. In connection with that business Charles Brower used all of U. S. Survey 1432 lying *north* of an old trail or road, except for a small area encompassing the family residence.

On July 1, 1943, Charles Brower entered into a partnership with two of his sons, Thomas and David. The business of the partnership was the buying and selling of general merchandise, furs, gold, and other commodities. The capital of the partnership was to be $25,616.06, one-third of which was to be contributed by each partner. Contemporaneous to the formation of the partnership, Charles Brower conveyed to Thomas and David a one-third interest each in the warehouses and store building (and some personal property) used by Charles in operating the Cape Smythe Whaling and Trading Co., all situated on U. S. Survey 1432. Appellants contend this conveyance transferred *only* the store and

buildings, while appellees argue that the subjacent and adjacent realty (i. e., the northern portion of U. S. Survey 1432) was transferred as well.

From July 1, 1943, until the death of Charles Brower on February 11, 1945, the partnership of the father and the two sons continued to operate the merchandising business. During this time the partnership continued to use the *north* portion of the U. S. Survey 1432 for the business.

After Charles Brower's death, the remaining two partners, sons David and Thomas, purchased his share of the partnership assets. The trial court found that the administrator of Charles Brower's estate believed that the northern portion of U. S. Survey 1432, used by the partnership, was partnership property and, except for the testator's one-third interest therein, did not consider the land as within the assets of Charles Brower's estate. The trial court concluded that the only part of U. S. Survey 1432 subject to the estate of Charles Brower was the *residence* lying north of the old road, *and* all of the survey lying south of that road. Taking into account certain purchases and conveyances,[3] the superior court found the respective interests to be as follows:

*Northern Parcel*

1. Thomas P. Brower owns in fee simple that portion of U. S. Survey 1432 lying *north* of the old trail or private road, *except* for the land upon which the family residence of Charles Brower was located as of the date of his death (February 11, 1945).

2. Thomas P. Brower owns the sole life estate in that land upon which the family residence of Charles Brower was located as of the date of his death. This life estate is measured by the life of the last survivor of

---

**3.** Shortly after the death of Charles Brower, David Brower acquired from Maria Brower (Ahgeak) the residence of Charles Brower. David subsequently used the residence as a store and home. Around October 30, 1952, David sold his interest in the Cape Smythe Whaling and Trading Co. partnership to his brother Thomas. During January 1974, Thomas acquired by quitclaim deed the interests of

two sisters (Flora Loveridge Kalbargh and Elizabeth Kelly) in U. S. Survey 1432. Finally, by letter agreement dated January 10, 1978, Thomas acquired all rights, title and interests of the remaining sons and daughters of Charles Brower living around Barrow to that portion of U. S. Survey 1432 lying *north* of the old trail or private road.

the following: Thomas P. Brower, David Brower, Sr., Maria Brower Ahgeak, Sadie Brower Neakok, Kate Sakeagak, Arnold Brower, Sr., Mary Stotts, and Robert Brower, Sr.

3. Thomas P. Brower owns $^{11}/_{14}$ths of the residual, or remainder, interest in that portion of U. S. Survey 1432 upon which the above-mentioned residence sits. Appellants own the remaining $^{3}/_{14}$ths remainder interest as follows: Jennie Dimond, $^{1}/_{14}$th; William Brower, $^{1}/_{14}$th; and William C. Brower and Marian Brower Ballas, $^{1}/_{28}$th each by right of representation through their deceased father James Brower.

*Southern Parcel*

1. Thomas P. Brower, Robert Brower, David Brower, Sadie Neakok, Arnold Brower, Maria Ahgeak, Mary Stotts, Kate Sakeagak, and Harry Brower own equally a life estate in that portion of U. S. Survey 1432 lying south of the old trail or private road, each party's interest measured by his or her own life.

2. The remainder fee interest in the southern portion of U. S. Survey 1432 is vested in all fourteen children of Charles Brower, their heirs or assigns, as modified by a letter agreement of January 10, 1978 and certain January, 1971, quitclaim deeds to Thomas Brower. Accordingly, the fee remainder to the southern parcel is owned as follows: Thomas P. Brower, $^{3}/_{14}$ths; all other brothers and sisters, (except Flora Loveridge Kalbargh and Elizabeth Kelly), their heirs and assigns, $^{1}/_{14}$th each.[4]

Appellants contend that they hold remainder fee interests in the *entire* area of U. S. Survey 1432, rather than in just the residence and southern portion. To reach this result, appellants argue that in granting each child a $^{1}/_{14}$th fee remainder to U. S. Survey 1432, the probate decree did not distinguish between the northern and southern portions of the survey; that by distributing interests to "U. S. Survey 1432" the probate court impliedly determined that the "deeds" to sons Thomas and David did *not* convey any realty; that this determination by the probate court is *res judicata*; that the entire survey was in the estate of Charles Brower and subject to distribution; that as residual holders of remainder interests, appellants have an interest in the entire survey; and finally, that appellants are entitled to a partition of the remainder interests. Thus appellants raise three grounds of error. First, that the superior court erred in concluding that the 1948 probate decree did not grant appellants a remainder interest in the entire survey area. Second, that the superior court erred in relying on extrinsic evidence to uphold the validity of and construe the scope of the 1943 deeds. Third, that the superior court erred in holding that non-possessory holders of remainder interests cannot maintain an action for partition.

Appellees position is that the probate court could not distribute land not in the estate; that the "deeds" conveyed all land used in the partnership business, i. e., all land north of the old trail or private road (excepting the residence) to Thomas and David Brower; that appellants' remainder interests are therefore necessarily limited to the residence and to the southern portion of U. S. Survey 1432; and that non-possessory holders of remainder interests cannot seek a partition without the consent of the life tenants.

We affirm the superior court's ruling as to the existing interests in U. S. Survey 1432, but we conclude it erred in holding that appellants cannot maintain an action for the partition of the remainder interest.

## I. Conclusiveness of the Probate Decree

Appellants argue that the 1948 probate decree is conclusive and *res judicata* as to the parties' interests in U. S. Survey 1432. They assert that the administrator made no

---

4. Thus, appellants William C. Brower and Marian Brower Ballas hold, through their deceased father James, $^{1}/_{28}$th each of the remainder. Appellants Jennie Dimond and William Brower hold $^{1}/_{14}$th interest each, as to David Brower, the heirs of Robert Brower, Maria Brower Ahgeak, Sadie Brower Neakok, Kate Sakeagak, Arnold Brower, Harry Brower, and Mary Stotts.

distinction between the north and south portion of the survey in distributing the remainder interest,[5] and thus each of Charles Brower's children hold a ¼th remainder interest, in fee, to the entire parcel. Appellees counter that the northern half of the survey was conveyed by the testator prior to his death and, therefore, was unavailable for distribution by the probate court. Before we reach the issue of the scope of the 1943 deeds, we must first determine whether the superior court erred in going beyond the face of the probate decree to adjudicate the respective interests in the land.

Appellants correctly state that a decree of a United States Commissioner, sitting in probate, is entitled to the same finality as judgments by other courts. *First National Bank v. Martin*, 16 Alaska 313, 323–24 (1956).[6] As a general rule such decrees are conclusive and not subject to collateral attack absent mistake, fraud or collusion. *Grant v. National Surety*, 7 Alaska 179, 185 (1924).[7] There is, however, an additional exception to this rule which allowed the trial court to review the 1948 decree. This "exception" is based on the jurisdictional argument that the decree cannot distribute rights in property not owned by the decedent, Charles Brower. Appellees thus argue that if the decree purports to grant appellants a remainder interest in both the south and north portion of U. S. Survey 1432 it cannot be *res judicata*, since the 1943 deeds conveyed out of Charles Brower's estate that northern portion of the survey area used in the partnership's business.

There is ample support for this position.[8] The recent case of *Matter of Estate of Swandal*, 587 P.2d 368 (Mont.1978), provides a factually analogous example. In that case the probate court's decree of settlement of final account and distribution of estate granted each heir a fractional interest in certain lease and mineral rights previously conveyed out of the estate. Nine months after the executor was discharged and the estate was closed, the executor petitioned to reopen the estate and amend the final decree. The heirs objected on the ground that the decree was *res judicata*,

5. The portion of the October 5, 1948, Order of Distribution upon which appellants rely states: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

    .    .    .    .    .

    (c) That distribution of the assets be made by the Administrator, in accordance with the terms of the will of decedent, as follows: The realty known as U. S. Survey # 1432, with improvements, excluding home and furnishings, in life estate, undivided and inalienable as a homesite, for so long as any live.
    To Maria Brower Ahgeak, as her sole property, all interest of decedent in the home and furnishings, situate on the realty above described.

    .    .    .    .    .

    To the children of decedent (14), in equal shares, to-wit:
    [names of children omitted]
    the following:
    Fee title to the realty above described, less home and furnishings, and warehouse, subject to the life estates set forth above."

6. Before statehood, United States Commissioners had original jurisdiction over probate matters.

7. *See In re Estate of Callnon*, 70 Cal.2d 150, 74 Cal.Rptr. 250, 254–255, 449 P.2d 186, 190–91 (1969); *Oberlander v. Eddington*, 391 P.2d 889, 893 (Okl.1964); *Erickson v. Reinbold*, 6 Wash. App. 407, 493 P.2d 794, 798 (1972).

8. The statute in effect at the time decedent's estate was probated provided that a devise of real property was to be considered a devise "of all the estate or interest of the testator therein *subject to his disposal. . . .*" (emphasis added). § 59–5–4 ACLA 1949. The following authorities support the principle that an order of distribution is not binding as to property not owned by the decedent: *Tooley v. Comm'r of Internal Revenue*, 121 F.2d 350, 357 (9th Cir. 1941); *Fernandez v. Garza*, 83 Ariz. 318, 320 P.2d 948, 950 (1958); *Lecky v. Staley*, 6 Ariz. App. 556, 435 P.2d 63, 66 (1967); *Romagnolo v. Romagnolo*, 230 Cal.App.2d 315, 40 Cal.Rptr. 807, 811 (1964); *Shelton v. Vance*, 106 Cal. App.2d 194, 234 P.2d 1012, 1014 (1951); *Pometti v. Laraia*, 134 Cal.App. 545, 25 P.2d 857, 859 (1933); *Matter of Estate of Swandal*, 587 P.2d 368, 370–71 (Mont.1978); *Smith v. McLaren*, 58 Wash.2d 907, 365 P.2d 331, 332–33 (1961); *Mezere v. Flory*, 26 Wash.2d 274, 173 P.2d 776, 779–80 (1946); *Parr v. Davison*, 146 Wash. 354, 262 P. 959, 960–61 (1928); *Matter of Estate of Blaney*, 607 P.2d 354, 358 (Wyo. 1980); Atkinson on Wills § 143 (2d ed. 1953).

since no appeal was taken. The trial court rejected the argument, took evidence regarding the prior conveyances, and amended the order of distribution to the extent that it disposed of property not within the estate. In affirming, the Montana Supreme Court stated:

> "upon principles of *res judicata*, the order of distribution is binding on everyone, even if the court has committed manifest error—*except* . . . that it is *not* binding as to property not owned by the decedent.
>
> .    .    .    .    .
>
> *Manifestly, if the decedent does not own the property, which is the situation in the case at bar, the decree of distribution does not pass title.*
>
> .    .    .    .    .
>
> The District Court here was without power or authority to distribute items which were not properly included in the inventory of the estate." (citations omitted, emphasis in original).

*Id.* at 370–71. The court subsequently allowed the original order of distribution to be amended under the authority of its Civil Rule 60, analogous to Alaska Rule of Civil Procedure 60.

Appellants argue, however, that by failing to use limiting language in its order of distribution, the probate court necessarily adjudicated title to the entire parcel. Even if the question of title was fully litigated during the probate proceedings,[9] the order of distribution could not distribute interests in realty no longer in Charles Brower's estate. To the extent that property was conveyed out of the estate, such a conveyance worked a *pro-tanto* reduction of the devise of the remainder; that is, a portion of the specific devise was adeemed.[10] After considering the evidence, the superior court found that the estate's administrator believed that the northern portion of the survey was *not* within the assets of Charles

Brower's estate, and, furthermore, that the testator's intent was to leave each child a remainder interest in that portion of the survey not necessary to the partnership's operation. A review of the record fails to indicate that these findings are clearly erroneous. Thus, we conclude that the superior court properly reached the question of whether the 1943 deeds conveyed a portion of Survey 1432.

## II. The 1943 Deeds

Contemporaneous to the 1943 formation of the partnership between Charles Brower and sons Thomas and David, Charles executed identical documents in favor of both Thomas and David. These documents were entitled "deeds" and provided, in relevant part:

### "DEED

.    .    .    .    .

That the party of the first part . . . does hereby grant and release one-third (⅓) right, title and claim on the following property located at Point Barrow, Alaska:

| | |
|---|---|
| Inventory, Merchandise Stock | $8,367.20 |
| Merchandise purchased and coming in by boat | 11,848.86 |
| Store and Equipment | 2,500.00 |
| Warehouse Number 1 | 300.00 |
| Warehouse Number 2 | 200.00 |
| Warehouse Number 3 | 500.00 |
| Warehouse Number 4 | 150.00 |
| Warehouse Number 5 | 300.00 |
| Warehouse Number 6 | 150.00 |
| Two Whale Boats and Equipment | 800.00 |
| Four Lighters | 100.00 |
| Total | $25,216.06 |

Together with all the *appurtenances* and all the estate and rights of the party of the first part in and to said *premises,*

TO HAVE AND TO HOLD the *premises* herein granted unto the party of the second part, his heirs and assigns forever. And the party of the first part covenants that it has not done or suffered anything whereby the said *premises* have been en-

---

**9.** Nothing in the probate record indicates that the question of title to the entire survey was adjudicated. Moreover, testimony at trial indicated that the administrator of Charles Brower's estate believed the north portion of U. S. Survey 1432 was *not* in the estate.

**10.** *E. g., In re Baxter's Estate,* 98 Mont. 291, 39 P.2d 186, 192 (1934); *In re Boice's Estate,* 209 Or. 521, 307 P.2d 324, 326 (1957); *In re Gerlach's Estate,* 364 Pa.2d 207, 72 A.2d 271, 273 (1950).

cumbered in any way whatever." (emphasis added).

Resolution of the parties' respective interests in U. S. Survey 1432 turns on the validity, scope, and effect of these "deeds." Three possible constructions exist: the deeds conveyed title to only the named buildings; the deeds conveyed title to the named buildings and the land situated directly underneath; or, the deeds conveyed title to the named buildings and the subjacent and adjacent land necessary to the proper and beneficial use of the buildings as a partnership asset.

Appellants urge a narrow and formalistic construction, namely, that the 1943 documents do not have the attributes of a deed and therefore did not convey any land.[11] Appellees, on the other hand, argue that the superior court correctly concluded that the deeds did convey real estate and, further, that the court properly admitted and relied upon extrinsic evidence to determine the amount of property conveyed.

### A. The 1943 Documents Conveyed Real Property

■ The superior court found that the 1943 deeds were intended to convey to sons Thomas and David a one-third interest each in the property, including land, used in the operation of the Cape Smythe Whaling and Trading Co. This determination is supported by the facts and case law.

The superior court found that the deeds followed the format customarily used in rural Alaska for the conveyance of real property. The form of each deed closely adhered to the then existing statutory requirement pertaining to conveyances of real property. At that time, Section 22–3–9 ACLA 1949 required that deeds be executed in the presence of two witnesses, who were then required to sign the deed.[12] Each deed complied with this requirement.

The documents contain additional attributes of a deed. For example, they are entitled "deeds"; they contain a habendum clause,[13] characteristic of real property conveyances;[14] they specifically describe certain buildings; and they contain language typically indicative of deeds, e. g., "grant,"[15] "appurtenances,"[16] and "premises."[17]

■ An instrument in the form of a deed is presumed to be a deed, and this presumption is strengthened by the presence of attestation which occurred here, 3 *American Law of Property* § 12.97, at 394 (A. Casner ed. 1974). This strong presumption, and the foregoing facts support the superior court's conclusion that a conveyance of real property was intended.

Appellants strongly urge that the deeds are mere bills of sale and do not convey real property. A similar argument was rejected in *Pottkamp v. Buss*, 3 Cal.Unrep.Cas. 694, 31 P. 1121, 1122 (1892). In that case, the court construed a conveyance of a "store, ... and the bakery attached thereto" to convey the named buildings, the land on which they stood, and so much of the sur-

---

**11.** Such a position would lead to the conclusion that appellants hold an aggregated ³/₁₄th remainder interest in the entire area of U. S. Survey 1432.

**12.** 22–3–9 ACLA 1949 provided:
"Deeds executed within the Territory of lands or any interest in lands therein *shall* be executed in the presence of two witnesses who *shall* subscribe their names to the same as such; and the person executing such deeds *may* acknowledge the execution thereof...." (emphasis added).
In 1953 the statute was amended to *require* an acknowledgement on a conveyance, Ch. 29, § 1, SLA 1953.

**13.** The clause in each deed read:

"TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, his heirs and assigns forever."

**14.** 3 American Law of Property § 12.39, at 280 (A. Casner ed. 1974).

**15.** *Id.*, § 12.44, at 288.

**16.** At least one author states that land can pass as an appurtenance. *See* H. Tiffany, The Law of Real Property § 998, at 246 (3d ed. 1975).

**17.** "Premises" is of broader connotation than the word "buildings" and connotes an area of land surrounding a house. *Maplewood Township v. Tannenhaus*, 65 N.J.Super. 80, 165 A.2d 300, 303–04 (App.Div.1960).

rounding land owned by the grantor as was necessary for the ordinary use of the buildings.[18]

■ We hold that a conveyance of title to named buildings can convey title to subjacent and adjacent realty. Thus, where an intention to do so is established, undescribed land may be conveyed when it is incidental or appurtenant to the grant. *Seefus v. Briley*, 185 Neb. 202, 174 N.W.2d 339, 343 (1970). *E. g., Black v. Ervin*, 132 Ind.App. 470, 176 N.E.2d 142, 144 (1961) (lease or deed of a building includes adjacent land of the lessor or grantor which is used with the building or is necessary to its proper occupation for the intended purpose); *Tadlock v. Mizell*, 195 N.C. 473, 142 S.E. 713, 714 (1928) (conveyance of "house" conveyed the building, lot, and outbuildings customarily used in connection with the residence); *Bogard v. Barhan*, 56 Or. 269, 108 P. 214, 216 (1910) (conveyance of "the brick store building" conveyed both the building and underlying, though undescribed, land); *Wade v. Odle*, 21 Tex.Civ.App. 656, 54 S.W. 786, 788 (1899) (to same effect).[19]

Appellants cite *Noland v. Coon*, 1 Alaska 36, 38 (1890) as contrary authority. In that case a water right was held not appurtenant to the conveyance of certain mining grounds. The court noted that a conveyance of the land which itself carried the water would include, as incidental or appurtenant, the right to such water. But in *Noland*, where the water was appropriated from other land, mere conveyance of the benefitted land did not also impliedly convey a right to the appropriated water. Moreover, the court in *Noland* noted that a water right is "separate and apart" from the mining property it is used for. *Id.* at 38–39. The unique facts of that case make it inapposite to the issues involved here.

**B. Use of Extrinsic Evidence to Determine The Scope of the Conveyance**

■ We must next determine whether the superior court erred in relying on extrinsic evidence in concluding that the deeds conveyed a one-third fee interest in both the named buildings and the surrounding land (i. e., the northern parcel of U. S. Survey 1432) which was necessary to the beneficial use of those buildings in the partnership business. As shown above, the superior court was justified in concluding that the documents were in fact deeds. The superior court was also justified, under the authority of *Shilts v. Young*, 567 P.2d 769 (Alaska 1977), in utilizing extrinsic evidence to determine the scope of the conveyance.

In *Shilts*, we established that where a deed is vague or ambiguous, resort may be had to extrinsic evidence to construe the deed:

"A valid deed must designate the land intended to be conveyed with reasonable certainty. However, '... [t]he purpose of a deed description is not to identify the land, but to furnish the means of identifi-

---

18. Appellants cite a factually similar case, *Hoskey v. Hoskey*, 7 Mich.App. 122, 151 N.W.2d 227 (1967) as contrary authority. However, as appellees correctly point out, the court in that case simply concluded that the evidence did not indicate an intent to convey any interest in real property. In this case, on the other hand, the superior court did find an intent to convey the named buildings and surrounding land.

19. That a document conveying title to certain buildings can also convey title to surrounding land is further supported by these cases: *Crozer v. White*, 9 Cal.App. 612, 100 P. 130, 133 (1909) (conveyance of "dwelling house and land appurtenant" held to convey entire 110 acre parcel surrounding house where evidence showed land was used for and sold for farming); *Bawden v. Hunt*, 123 Mich. 295, 82 N.W. 52, 53 (1900) (grant of house conveys land on which it stands or which is essential to its use); *Carpenter v. Sickles*, 13 Misc.2d 1025, 181 N.Y. S.2d 665 (N.Y.Sup.1958) (conveyance of a building carries with it freehold interest in land on which it is located and which is a necessary incident to its use and enjoyment).

A similar rule obtains in the construction of wills. Thus a devise of named buildings conveys the land upon which the buildings sit as well as any land used in connection with the building, unless an unambiguous expression of intent to the contrary exists. *Mund v. Friedman*, 89 Ill.App.2d 338, 232 N.E.2d 757, 767 (1968); *In re Stephan's Will*, 199 Misc. 118, 98 N.Y.S.2d 416, 419–20 (N.Y. Surrogate 1950).

*See also* Annot., What Passes Under, And is Included In, Devise of "Building," "House," or "Dwelling House," 29 A.L.R.3d 574 (1970).

cation.' Thus, a description is sufficient if it contains information permitting identification of the property to the exclusion of all others.

Older cases suggest that where the terms of the grant or deed leave the identity of the real property completely uncertain, the deed is void. The general rule, however, is that where possible, deeds will be made operative and the intentions of the parties given effect. A deed is not void for uncertainty of description if the quantity, identity or boundaries of the property can be determined by reference to extrinsic evidence. Such evidence may include parol and subsequent conduct of the parties as well as other documents. There appear to be few restrictions on the use of extrinsic evidence in ambiguous or uncertain deed cases, although at least one court has cautioned that 'there must be sufficient information in the property description to base title substantially on written evidence and not principally on parol evidence.'" (footnotes omitted).

*Id.*, at 773–74.

In *Shilts*, the deed conveyed six blocks of land within a certain survey. The deed specified numbered blocks, identified as to location by reference to named streets and "more particularly described on Survey No. 691...." *Id.*, at 771. The named survey was never located, and no evidence at trial showed the existence or location of any of the named streets. *Id.* Nevertheless, we upheld the use of extrinsic evidence to identify the land conveyed so as to uphold the deed's validity. *Id.*

■ In the case at bar, the trial court was able to identify the property allegedly conveyed. Relying on testimonial evidence, the court concluded that the northern portion of U. S. Survey 1432 was used in connection with the buildings conveyed, and that the parties intended the conveyance of fractional interests in the buildings to carry with it title to the surrounding land. This is supported by the trial court's finding that Charles Brower intended to leave each child

a remainder interest in that portion of the survey not necessary to the partnership's operations. Since the scope of the conveyance is a question of fact,[20] the superior court's conclusion that two-thirds of Charles Brower's interest in the northern portion of U. S. Survey 1432 (excepting the residence) was conveyed in fee by the 1943 deeds must stand unless clearly erroneous. Alaska R.Civ.P. 52(a). The court's findings are supported by uncontradicted evidence and, therefore, we affirm its determination of the parties' interests in U. S. Survey 1432.

### III. Partition of the Remainder Interests

■ Appellants sought a partition of the remainder held by them and the appellees in U. S. Survey 1432. The superior court denied relief, holding that appellants could not maintain a partition action because they held no present possessory interest in the land. Appellees ask up to uphold this "possession" requirement and to further hold that remaindermen cannot sue for partition absent the life tenant's consent. Thus, the issue is whether a non-possessory fractional holder of a fee remainder interest can maintain an action for partition of the remainder, as a tenant-in-common, against other remaindermen, even though one or more of the other remaindermen are life tenants of the same land and do not consent to the action.

Resolving this issue turns on the construction of AS 09.45.260:

"When several persons own real property as tenants in common, in which one or more of them have an estate of inheritance or for life or years, or when real property is subject to a life estate with remainder over, an action may be brought by one or more of those persons or by the life tenant for a portion of it according to the respective rights of the interested persons, and for a sale of the property or a part of it if it appears that a partition cannot be had without great prejudice to the parties."

**20.** *Shilts; Hammond v. Abbott*, 166 Mass. 517, 44 N.E. 620 (1896).

The requirement of a possessory interest, which the superior court imposed, is not found in the statute. In fact, such a condition was dropped from the earlier version of the statute when AS 09.45.260 was enacted in 1962.[21] This subsequent amendment of the statute evidences a legislative intent to abolish the possession requirement. We hold that the superior court erred in imposing such a requirement.

We must next determine whether the statute authorizes remaindermen to sue for partition. Appellees argue that it does not. They cite *Akagi v. Ishioka*, 47 Cal.App.3d 426, 120 Cal.Rptr. 807 (1975), which construed a similar California statute as not authorizing a sole remainderman to sue a sole life tenant for partition. However, appellants are suing appellees in their capacity as co-holders of remainder interests in U.S. Survey 1432.

Thus, the issue becomes whether under AS 09.45.260 remaindermen can sue remaindermen for partition of the remainder over the objection of a life tenant. The statute defines two classes authorized to sue, but is susceptible to varying interpretations. Appellees argue that the statute provides for two situations:

"a) 'When several persons own real property as tenants in common, in which one or more of them have an estate of inheri-

tance or for life or years' then any co-tenant can sue; or

b) '[W]hen real property is subject to a life estate with remainder over' then a life tenant can sue."

Thus, appellees argue, appellants cannot sue for partition because they are neither (a) tenants in common where one or more holds an estate of inheritance, life or years, nor (b) holders of a life estate. But the appellees and appellants are tenants in common [22] in the remainder, and at least one of the appellees, Thomas Brower, holds a life estate in the property. Thus, even under appellees' construction, the appellants are authorized to sue for a partition of the remainder. Further, "those persons" necessarily refers to the class of co-tenants rather than just to life tenants. We hold that remaindermen can sue co-tenants in the remainder, in their capacity as remaindermen, for a partition of the remainder. *See Geary v. DeEspinosa*, 51 Cal.App. 52, 196 P. 90, 92 (1921).

Finally, no authority appears to support appellees' position that a life tenant can preclude an action for partition of a remainder by withholding consent. Alaska Statute 09.45.320 provides that partition can be ordered subject to the life tenancy,[23] and appellants correctly note that various courts have so held.[24] In addition, AS 09.-

---

21. The older statute, § 56–1–41 ACLA 1949, provided:

"When several persons hold *and are in possession* of real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years or when several persons hold as tenants in common a vested remainder or reversion in any real property, any one or more of them may maintain an action...." (emphasis added).

This statute was apparently taken from a similar Oregon statute which was construed to require possession, thereby precluding non-possessory holders of remainder interests from suing for partition. *Savage v. Savage*, 19 Or. 112, 23 P. 890 (1890). The same result obtained in California under its earlier analogous statute. *See Geary v. DeEspinosa*, 51 Cal.App. 52, 196 P. 90, 91 (1921). But California's partition statute followed a legislative pattern similar to Alaska's. It originally required possession, but was subsequently amended. The amended version closely parallels AS 09.45.260, and has been construed to *not* require possession as a

prerequisite to an action for partition. *Akagi v. Ishioka*, 47 Cal.App.3d 426, 120 Cal.Rptr. 807, 808–09 (1975).

22. Appellees do not appear to admit this, but under AS 34.15.110 a "devise of land or an interest in land made to two or more persons [excepting husband and wife] ... shall be construed to create a tenancy in common in the estate...."

23. AS 09.45.320 provides:

"The judgment and partition shall not affect tenants for years or for life of the whole of the property which is the subject of partition, ...."

24. *See Geary v. DeEspinosa*, 51 Cal.App. 52, 196 P. 90, 92 (1921); *Deadman v. Yantis*, 230 Ill. 243, 82 N.E. 592 (1907); *Heintz v. Wilhelm*, 151 Minn. 195, 186 N.W. 305, 306 (1922); *Crowley v. Sutton*, 209 S.W. 902, 903 (Mo. 1919).

45.450 provides that a court can even order the sale of the *life estate* if appropriate under the circumstances.[25] Neither of these statutes, nor any provision of the Alaska statutes pertaining to partition, specify that a life tenant can preclude partition of the remainder by withholding consent.

In sum, the superior court erred in requiring possession as a condition to maintaining an action for partition. We hold that AS 09.45.260 allows appellants, as remaindermen, to sue appellees, as co-tenants in the remainder, for partition of that remainder notwithstanding the latter's objection in their capacity as life tenants. We do not consider a number of problems which may result from a partition of the interests here, leaving those problems to be addressed by the superior court.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

25. AS 09.45.450 provides:

"When the estate of a tenant for life or years in an undivided part of the property in question is admitted by the parties or ascertained by the court to be existing at the time of the order of sale, and the person entitled to that estate is a party to the action, the estate may be first set off out of a part of the property and a sale made of that part, subject to the unsold estate of that tenant in that part. But, if in the judgment of the court a due regard to the interest of all the parties requires the sale of that estate also, the sale may be ordered."