In the Matter of the Estate of LOLA MAE SWANDAL, DE-
CEASED.

No. 14020.
Submitted Sept. 21, 1978.
Decided Nov. 27, 1978.
587 P.2d 368.

McKinley Anderson (argued), Bozeman, William E. Gilbert, Bozeman, for appellant.

Huppert & Swindlehurst, Livingston, Joseph T. Swindlehurst (argued), Livingston, for respondent.

MR. JUSTICE DALY delivered the opinion of the Court.

From a judgment amending a decree of settlement of final account and distribution of the estate of Lola Mae Swandal, certain of the heirs appeal.

Lola Mae Swandal died November 8, 1974. At the time of her death, she was a resident of Park County, Montana. Her will was admitted to probate on November 26, 1974, by the District Court of the Sixth Judicial District, the Honorable Jack D. Shanstrom; by the same order, Kenneth Lovely was named executor of the estate, pursuant to the terms of the will.

In the course of his duties as executor, Lovely filed, on April 8, 1975, an inventory and appraisement which included recitation of an oil lease with Humble Oil & Refining Company on certain land legally described, which will be referred to hereafter as Sections 22, 24 and 36, and one with Atlantic Richfield Co. on land also legally described, which will hereafter be referred to as Section 16.

On July 3, 1975, the executor filed a return and account of sale of real property and petition for order confirming sale. The property involved was that three-fourths of Section 16, owned by the decedent at the time of her death and referred to as the "Home Place". The sale was made to C. Wendell Lovely and Norma G. Lovely for $125,000. Both a hearing on the return and notice of the hearing were ordered that same day. At the July 15, 1975, hearing on the return, Bruce R. McLeod and Peggy H. McLeod offered $150,000 for the property, which offer was accepted by the heirs. The District Court, in its order dated two days later, confirmed the sale of the Section 16 property "with the tenements, hereditaments and appurtenances thereto" to the McLeods as the highest bidders.

After a reappraisal, duly authorized to the District Court, the Section 22 property was sold to Thomas E. Lane. A return and account of sale with respect to the property was filed by the executor on August 5, 1975, the same date on which Judge Shanstrom issued an order fixing a hearing on the return. That hearing was held on August 19, 1975, and an order confirming the sale of the Section 22 property was filed the same day. Of note is that the portion of the description which reads "Excepting therefrom One-half of the existing oil, gas, hydrothermal and mineral rights" has been inked out and initialed "JDS", indicating that at this hearing there had been some discussion of the mineral rights. The Section 22 property also was sold "with the tenements, hereditaments and appurtenances thereto".

A statement of account for first and final distribution and petition for distribution of estate was filed by the executor on August 28, 1975. Attached to it as Exhibit C was a schedule of assets, which included a recital of oil leases on and mineral rights reserved from Sections 16, 22, 24 and 36. The District Court on September 23, 1975, issued the decree of settlement of final account and distribution of estate distributing to each of the heirs a fractional interest in the lease and mineral rights of Sections 16, 22, 24 and 36.

On March 2, 1976, Lovely was discharged as executor of the estate by a decree of final discharge. Some nine months later, on December 7, 1976, Lovely filed a petition to reopen the estate and amend the decree of settlement of final distribution. In that petition he alleged that the decree inadvertently distributed the mineral rights of Sections 16 and 22 which had been conveyed with the real property sold to the McLeods and to Lane before the decree of settlement was filed. That day, an order setting hearing on the petition was issued, and notice sent to all interested parties. The hearing, at which testimony was taken and exhibits introduced, was held before Judge Shanstrom on July 19, 1977. Lovely was there, represented by counsel; present also were certain of the heirs with their attorney.

The day of the hearing, counsel for the heirs filed an objection to

the petition to reopen the estate and amend the decree of settlement of final account. That objection alleged that petitioner failed to object to the decree of settlement at the time it was issued and so the decree was *res judicata*. The opponents further declared that no appeal had been filed, and that to reopen the estate to amend the decree would operate as a fraud on the heirs to whom it was represented by the executor that the mineral rights had not been conveyed in the sales of Sections 16 and 22.

Despite these objections the District Court filed an amended decree of settlement of final account and distribution of estate on July 29, 1977, reflecting the distribution of the previously conveyed mineral rights to the purchasers and their successors in interest. Notice of entry of judgment was sent to heirs Mabel Louise Easton and Susan Denise Swandal on August 19, 1977, and they timely filed notice of appeal therefrom on September 1, 1977.

Appellants offer two issues for our consideration:

1. Did the District Court have jurisdiction to reopen the case to amend the decree?

2. Did the executor have authority to convey the mineral interests of Sections 16 and 22 in the sale of that property?

The second issue is not properly before the Court in this particular action as the challenge below was levied at the propriety of the procedure adopted by the executor in seeking to amend the decree. Our attention thus turns to the first issue.

■ Respondent's central contention is that the inclusion in the decree of the mineral rights of Sections 16 and 22 was nothing more than a "scrivener's error", susceptible to correction under Rule 60(a), M.R.Civ.P., using the procedure adopted by the executor. Rule 60(a) provides:

"Clerical mistakes in judgments, orders or other parts of the record, and in pleadings, and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."

This rule is properly invoked in virtue of section 91A-1-304, R.C.M.1947, which states:

"Unless specifically provided to the contrary in this code [the Montana Uniform Probate Code] or unless inconsistent with its provisions, the rules of civil procedure including the rules concerning the vacation of orders and appellate review govern formal proceedings under this code."

" 'Formal proceedings' means those conducted before a judge with notice to interested persons." Section 91A-1-201(16), R.C.M. 1947.

Appellants agree that reliance on Rule 60(a) to get the decree amended is proper if the issue is one of correcting errors appearing in the decree. They challenge the propriety of such reliance, however, arguing that more than mere error is involved here. The issue, as they view the matter, is "what happened to the mineral rights".

It is clear that prior to the distribution of the assets of the estate, the mineral rights in question had been conveyed to the purchasers on Sections 16 and 22. Whether the conveyances were made in excess of or contrary to the authority of the executor is not being decided here. The fact is that they were made.

The explanation offered by respondent concerning how these mineral rights happened to be included in the decree of distribution is that the attorney who prepared the final decree used the legal descriptions of certain of the estate's real property, including that of Sections 16 and 22, contained in the oil lease with Humble Oil and Atlantic Richfield. Respondent claims that confusion resulted because, at that time, the estate in fact did own the mineral rights leased to Humble Oil of Sections 24 and 36. Because of this confusion, the heirs erroneously were given shares of mineral rights which had already been conveyed to the purchasers of the property.

Appellants correctly point out that respondent improperly relies on section 91A-3-1009, R.C.M.1947, which authorizes the District Court, upon petition and notice, to appoint a personal representative to administer *subsequently discovered* property of the

settled estate. The property under consideration in the instant case is not "subsequently discovered"; thus, the operation of this statute is not triggered. They contend that this is the only statute in the Montana Uniform Probate Code which authorizes the District Court to reopen an estate. Thus, because it is not properly invocable in these circumstances, the District Court had no authority to reopen the estate to amend the decree. We disagree with this latter contention, inasmuch as Rule 60(a) was correctly relied on by the District Court.

■ Atkinson on Wills § 143 (2nd ed. 1953) declares that upon principles of *res judicata*, the order of distribution is binding on everyone, even if the court has committed manifest error — *except*, as is indicated in the footnote to this statement, that it is *not* binding as to property not owned by the decedent. See *Parr v. Davison* (1928), 146 Wash. 354, 262 P. 959, 960-61. Although in the instant case, the property in question was owned by the decedent at the time of her death, it could not properly be said to have been owned by her (that is, in her estate) at the time of distribution, as it had previously been conveyed to the purchasers of the property.

A later Washington case, *Mezere v. Flory* (1946), 26 Wash.2d 274, 173 P.2d 776, 779-80, dealt with problems similar to the one at bar. There it was declared:

"The function of the decree of distribution is to determine heirship and to distribute to the heirs entitled thereto only such interest as the decedent has at the time of his or her death. *Manifestly, if the decedent does not own the property, which is the situation in the case at bar, the decree of distribution does not pass title.*

" 'The decree of distribution distributed only such title as the testatrix had at the time of her death. If the testatrix does not own the property, obviously the decree of distribution passes no title, * * *' *Pometti v. Laraia*, 134 Cal.App. 545, 25 P.2d 857, 859.

" 'Neither the administration of the estate, nor the distribution of the property thereunder, adds or creates any title or gives any new title.' *Reichard v. Chicago, B. & Q. R. Co.*, 231 Iowa 563, 1 N.W.2d 721, 731.

" . . .

"We find no comfort for appellants in the language—applicable to the facts in the cases cited by appellants—of some of our opinions to the effect that as the superior court is a court of general jurisdiction and a probate proceeding is a matter in rem, upon a proper notice those notified and all the world are bound by the decree of distribution entered in the probate proceeding. As the res in such a proceeding does not include property inventoried in the estate if such property does not belong to the decedent, the owner of that property would not be estopped by the decree of distribution unless the question of title to the property was before the probate court.

" '* * * *the inventory is not conclusive as to the assets of the estate, or as to rights with respect to the property listed therein,* at least where there has been no specific judicial determination of the question.' 21 Am.Jur. 471.

" . . .

"We adopt as our own the following from the opinion of the trial court:

" '* * * *all that the court in the ordinary probate does is to determine judicially who takes the property left by the decedent, and as the decedent in the Bragg estate had no title to or legal interest in this property,* * * * *the probate court was lacking in power or authority to distribute it.'* " (Emphasis added.)

■ The District Court here was without power or authority to distribute items which were not properly included in the inventory of the estate. It assuredly did have the power and authority to correct the error which was unwittingly made because of an earlier error made by one of the attorneys who prepared the items for the court's consideration.

"It has been uniformly held in the jurisprudence of the Territory and State of Montana, that judgments or records of trial courts may be modified or amended by the entry of *nunc pro tunc* orders or amended judgments . . . or to make the record speak the truth . . . or otherwise truly to express what was actually decided or to

grant the relief originally intended to be granted . . .

"But the sole permissible purpose of such amendment is to correct an error which has crept into the judgment by reason of misprision on the part of the clerk, judge or counsel, and is apparent on the face of the record, so that the judgment will truly express what was actually decided or intended to be decided and will grant the relief originally intended to be granted, together with the relief following therefrom by reason of law; but not to set aside a judgment actually rendered (except on motion for new trial) nor to change the rights fixed by it as originally intended and made . . .

"The test is whether on the one hand the change will make the record speak the truth as to what was actually determined or done, or intended to be determined or done by the court, or whether, on the other hand, it will alter such action or intended action.

"Where the amendment comes within the permissible class as above noted, there would seem to be no reason, nor any supportable precedent, limiting by time or term the court's right to correct its record; for if the power is to be effective and do justice to parties and public, it must continue until the error is called to the court's attention and corrected. Thus, in the cases cited above, proper correction of the record or judgment was approved, whether made immediately, *or several months* or years *later.*" *State ex rel. Kruletz v. District Court* (1940), 110 Mont. 36, 39-41, 98 P.2d 883, 885-886.

We have since made it clear that such types of error are now taken care of by Rule 60, M.R.Civ.P. *Kottas v. Kottas* (1974), 164 Mont. 30, 33, 518 P.2d 1404.

It is true, as appellants contend, that the District Court is without jurisdiction to try questions of title among the estate, the heirs and third parties. *In re Jennings' Estate* (1925), 74 Mont. 449, 466, 241 P. 648; *In re Dolenty's Estate* (1916), 53 Mont. 33, 43, 161 P. 524. "[B]ut the court does have power to determine the fact whether or not property in dispute belongs to an estate as an asset thereof or for the purpose of inclusion in the inventory." *Tucker v. Brown* (1944), 20 Wash.2d 740, 150 P.2d 604, 639. "The power to issue a *nunc pro tunc* is inherent in the court." *State ex rel. Craig v.*

*District Court* (1969), 153 Mont. 427, 429, 458 P.2d 608, 609. That the attention of the court is not directed to an error including property which cannot properly be included for distribution until some months after the error is made is insufficient to divest the District Court of its inherent power to correct mistakes so that the record will speak the truth.

■ The District Court has jurisdiction to amend an erroneous decree. A problem exists, however, with the manner in which the court amended the decree of settlement of final account. The amendment distributes mineral rights which are not part of the corpus of the estate. The mineral rights attendant to Sections 16 and 22 were conveyed in the sale of that property; thus they were not available for inclusion in the estate. Because they were not part of the estate, they were not susceptible to distribution to anyone. *No* grant of those mineral rights should be made in the decree of settlement.

Because the District Court erroneously included the mineral rights in the amended decree, the cause is remanded for a subsequent amendment by an order *nunc pro tunc* which excepts the mineral rights previously conveyed, as they cannot properly be included in the Swandal estate.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and SHEEHY concur.