Marion C. APPLE, Appellant
(Defendant Below),

v.

Hilda KILE, Appellee (Plaintiff Below).

No. 2–182A5.

Court of Appeals of Indiana,
Second District.

Dec. 21, 1983.

Rehearing Denied Jan. 13, 1984.

Transfer Denied March 16, 1984.

David H. Williams, Noel, Noel & Williams, Kokomo, for appellant.

George Wildman, Miller, Tolbert & Wildman, Logansport, for appellee.

SULLIVAN, Judge.

Marion C. Apple (Apple) appeals a negative judgment quieting title and awarding possession of approximately 30 acres real estate to his sister, Hilda Kile. Apple's claim rests upon a devise from his and Hilda's mother. On the other hand, Hilda Kile claims ownership by virtue of a devise from their father.

In 1937, the father of Apple and Kile became the owner of the disputed 30 acre tract. The warranty deed, as executed and recorded contained only the father's name as grantee. Apple claims that an easement agreement executed in 1939 by father and mother indicates that they believed that they owned the property jointly. It may be noted, however, that the mother's execution of the easement was appropriate in light of her inchoate interest in real estate owned solely by her husband. Burns' Stat. Ann. (1933 Ed.) § 6–2341; *Howlett v. Dilts* (1892) 4 Ind.App. 23, 30 N.E. 313.[1]

On December 6, 1958, father died testate, devising the 30 acres to Kile. Acting as executor of his father's estate, Apple sent the required statutory notices of probate proceedings to all heirs and devisees, but believing the property was jointly owned by his father and mother, did not personally inform Kile of the bequest. Nor did he include the property in the final inventory of the estate's assets. On February 19, 1962, the Cass Circuit Court issued a final decree of distribution and closed father's estate. The 30 acres in dispute were never "distributed." Unaware of the devise and also assuming the property had been jointly owned by her mother and father, Kile did not challenge this final decree.

Mother continued to possess the disputed 30 acres from her husband's death in 1958 to her own death in 1975. She rented the property to Apple from 1958–70 and to Kile's husband from 1970–75.

Mother died March 29, 1975. Her will devised the 30 acres to Apple. On June 16, 1976, mother's estate was closed without challenge and the real estate was "distributed" to Apple.

In May of 1980, when Apple attempted to secure a loan on the real estate, he discovered that Kile was the record owner. Apple asked Kile to sign a quit-claim deed in order to clear his title. Instead, Kile began an action to obtain possession and quiet title.

The trial court determined that Apple had a duty as executor of his father's estate to "distribute" the property to Kile. Having failed to do so, he was now estopped to benefit from his own neglect by claiming title to that property. Whereupon, the trial court ordered possession and quieted title in favor of Kile.

Apple presents two issues. He first contends that his mother acquired title by adverse possession rendering conclusive her devise of the real estate to him. Secondly, he asserts that his sister may not collaterally attack the proceedings in the mother's estate which vested title in himself.

He states the first issue as follows: "May one [mother] who acquires title to real estate by adverse possession devise it by a valid will against the claims of the record title holder [Kile]?" Appellant's brief at 1.

Upon reviewing the record and briefs, we find that the fundamental issue is whether adverse possession was litigated at trial.

---

1. The law at present, substantially unchanged, is set forth in I.C. 29–1–2–3.

## I.

Apple contends that the trial court found that mother, at the time of her death, owned the 30 acres in dispute by adverse possession. Therefore, she could devise the land to Apple, and that accordingly the trial court's conclusion that Apple was estopped from claiming title was contrary to law.

The trial court made 14 findings of fact reflecting the events previously recited. Two are of particular importance:

"6. That the testimony at the trial on the 8th day of April 1981, is uncontradicted that from February 16, 1962, Elizabeth Apple, wife of deceased testator, Marion M. Apple, possessed said property in question in this lawsuit. The evidence of ownership included the payment of taxes, peaceful and quiet enjoyment, and receiving rents and profits. The ownership was open and notorious to the parties involved in this lawsuit because Richard Kile, husband of Hilda Kile, and Marion C. Apple both farmed this tract of land, sharing profits with Elizabeth Apple.

7. That during the period from February 16, 1962 to March 29, 1975, the date of death of Elizabeth Apple, no objections to Elizabeth Apple's possession or ownership of this parcel of property was made by any party." Record at 93.

Kile argues that adverse possession is an affirmative defense which Apple was required to specifically plead pursuant to Ind. Rules of Procedure, Trial Rule 8(C). Since Apple's answer to the complaint was a general denial, he cannot rely upon that defense for recovery. Furthermore, Kile alleges that Apple specifically waived the defense by stating prior to trial that adverse possession was not an issue to be litigated.

Trial Rule 8(C) does require that an affirmative defense be specifically pleaded. Our courts, however, have modified the rigid requirement by interpreting it in conjunction with T.R. 15(B) which allows liberal amendment of pleadings to reflect the issues actually litigated at trial.

Kile alleges that Apple, at a pretrial conference, denied that adverse possession was an issue to be litigated at trial. This allegation is set forth in Kile's opposition to Apple's Motion to Correct Errors, as well as her appellate brief. Our search of the record does not reveal a pretrial order. Although the statement of a party's attorney is not evidence, Apple has failed to provide us with any proof to rebut that statement. Moreover, the contention is supported by the suggested conclusions of law which Apple tendered to the trial court. In that document, Apple *specifically* states that adverse possession is not relied upon. These circumstances strongly imply that the issue of adverse possession was not contemplated at the pretrial stage.

█ The general rule, however, is that the pretrial stages, such as the pleadings, the pretrial order, or the theories advanced by the parties, are only guiding tools to the trial court and the parties. *Indianapolis Transit System, Inc. v. Williams* (1971) 148 Ind.App. 649, 269 N.E.2d 543, 550. Once the trial is completed without objection to its course, the evidence controls. The trier of fact may then find any facts which a preponderance of the evidence permits, and an issue may be injected if justified by the facts. *Id.* The new issue is deemed to have been tried by consent.[2]

█ This general rule is not without limitation, however. Fairness requires that the opposing party have "some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order." *Aldon Builders, Inc. v. Kurland* (3rd Dist.1972) Ind.App., 284 N.E.2d 826, 832. This is particularly true when the new issue is not unequivocally clear from the evidence presented at trial. *Id.* "Implied consent to trial of an unplead-

---

2. That Apple did not move to amend his answer to include the defense of adverse possession is not fatal to his position. In *Joy v. Chau* (1st Dist.1978) 177 Ind.App. 29, 377 N.E.2d 670, the court of appeals held that a formal motion was unnecessary if the issue was litigated at trial. The pleadings are deemed amended to conform to the issues tried. *Id.* at 675.

ed defense may not be deduced merely because evidence relevant to a properly pleaded defense inferentially suggests a defense not within the pleadings." *Elkhart County Farm Bureau Coop. Ass'n. v. Hochstetler* (3rd Dist.1981) Ind.App., 418 N.E.2d 280, 284. The limitation is particularly pertinent where, as here, not only had Apple failed to plead the defense, but had specifically denied he would litigate that issue.

■ Apple's proposed conclusions of law adopted a defense of equitable estoppel rather than adverse possession. Basically, he invited the conclusion that since all parties had believed the 30 acres were jointly owned by mother and father and all parties had relied on the distribution of mother's and father's estates, it would be against equitable principles to allow Kile to accept part of those final decrees of distribution and reject other parts.

We may assume that the evidence which Apple now claims establishes adverse possession was admissible as it bore upon the estoppel assertion. The concepts are similar in nature. We are not, however, concerned with whether particular evidence was or was not admissible. We are concerned with whether Apple may inject a new issue utilizing properly admitted evidence when he has failed upon the issue under which the evidence was admitted. The crucial factor is the notice to the adversary of the existence of the issue and the opportunity to defend against it. It relates to the requirement that the "new" issue must be tried by consent of both parties and may not be belatedly utilized to salvage a lost cause. *Bahre v. Metropolitan School District* (1st Dist.1980) Ind.App., 400 N.E.2d 197.

The main thrust of Apple's case-in-chief and cross-examination of Kile's witnesses appeared to be directed towards a theory of reliance and estoppel. Apple presented two witnesses at trial—Kile's husband and himself. Although Apple testified that he share-cropped the 30 acres from 1958–70, the bulk of his testimony addressed his conduct as executor of his father's estate, his belief that the 30 acres were jointly owned, his possession and use of the land since distribution of mother's estate, and how he had discovered the defect in his title. Kile's husband testified that as co-executor of mother's estate, he distributed the property according to mother's will. He also verified the fact that he had cash-rented the disputed property from mother from 1970–75, that he knew Apple had farmed the property from 1958–70, and he assumed Apple had cash-rented the property from 1976 to the present. Similarly, on his cross-examination of Kile, Apple elicited testimony that mother had possessed the property from father's death in 1958 to her own death in 1975, that Kile's husband had cash-rented the land from mother, that Apple had farmed it from 1958–70 and possessed it from 1975 to the present, and that she was not aware during those years that she was the legal title holder. While this testimony might support a claim of adverse possession, it also arguably advances the theory that everyone believed mother owned the real estate and relied on that belief. Other evidence included the tax records, father and mother's wills, an easement agreement executed in father and mother's names, and the title records; all of which support Apple's proposed claim of estoppel.

The record does not prompt a reasonable conclusion that Kile had unequivocal notice that the issue of adverse possession was being tried. Until Apple's Motion to Correct Errors was filed, the record is devoid of any suggestion that Apple was relying on an adverse possession theory. The defense was not pleaded in Apple's answer to the complaint. The record contains no pretrial order, but Apple's suggested conclusions of law proposed a theory of equitable estoppel to the exclusion of adverse possession. Moreover, the record does not include opening or closing arguments which might help clarify what theory the evidence was intended to support. Apple made no effort to amend his answer pursuant to T.R. 15(B).

The fact that the trial court made a finding that mother possessed the land openly and notoriously without challenge does not in itself support the conclusion that adverse possession was tried by the parties. For one thing, the trial court encompassed those facts in a series of findings which suggests that it was merely a recitation of the history and events which led to the quiet title action. Furthermore, although the trial court used words of adverse possession, i.e. "open and notorious," it did not include the words hostile, actual, exclusive, or continuous, all elements which must be present to establish adverse possession. Neither did the court use the term "adverse possession."

Apple proposed a theory of estoppel for recovery and specifically denied reliance on adverse possession. He invited the court to disregard the latter issue. He cannot invite error and then successfully raise the issue on appeal to gain reversal. *Hormuth Drywall, Etc. v. Erectioneers, Inc.* (1st Dist.1978) 178 Ind.App. 16, 381 N.E.2d 490. "... [A]n appellant who has presented his case to the trial court on a certain and definite theory shall not be permitted to change on appeal and prevail upon another theory not previously advanced." *Clarkson v. Department of Ins., Etc.* (2d Dist.1981) Ind.App., 425 N.E.2d 203, 206, *trans. denied.*

## II.

Apple states his second issue as follows:

"May a court's judgment that one [mother] died seized of certain real estate be collaterally attacked in a later proceeding in a coordinate court in a case involving the same parties?" Appellant's brief at 1.

In essence, Apple argues that the probate court's final decree of distribution in mother's estate is a final judgment which cannot be attacked in this quiet title action. He contends that Indiana's probate laws provide a proper vehicle for challenging and modifying or vacating the final

distribution of an estate,[3] which Kile has failed to follow. Therefore, she is barred from relief in the form of a subsequent quiet title action.

It is correct that a decree in final settlement of an estate is a final judgment binding on all interested parties. *Heitman v. Scales* (1942) 111 Ind.App. 68, 38 N.E.2d 890. It cannot be collaterally attacked more than one year after judgment is rendered. *Leeper v. Wilson* (1964) 137 Ind. App. 285, 201 N.E.2d 500. We agree with Kile, however, that the order of distribution is *not* binding if the property is not owned by the decedent. *Atkinson on Wills* § 143 (2d Ed.1953). *See* 31 Am. Jur.2d *Executors & Administrators* § 600 (2d Ed.1967). Although Indiana courts have not specifically addressed the issue, other jurisdictions have done so. In *Matter of Estate of Swandal* (1978) 179 Mont. 429, 587 P.2d 368, the Supreme Court of Montana, citing *Atkinson on Wills*, held that the principal of res judicata did not apply when the property distributed in a final decree was not owned by the decedent. The court went on to say that neither administration of the estate nor the purported distribution of the land could pass title which did not exist. A probate court may only determine who takes property owned by the decedent. *See* 31 Am. Jur.2d *Executors & Administrators* § 598 (2d Ed.1967).

If the probate court has not addressed the question of title, the true owner is not estopped by the final decree of distribution. *See Blake v. Blake* (4th Dist. 1979) Ind.App., 391 N.E.2d 848, 854. *Matter of Estate of Swandal, supra,* 179 Mont. at 435, 587 P.2d at 371. Other jurisdictions have come to similar conclusions. *Tooley v. Commissioner of Internal Revenue,* 121 F.2d 350 (9th Cir.1941); *Dimond v. Kelly,* 629 P.2d 533 (1981); *Romagnolo v. Romagnolo,* 230 Cal.App.2d 315, 40 Cal.Rptr. 807 (1964); *Mezere v. Flory,* 26 Wash.2d 274,

---

**3.** I.C. 29–1–1–21 (Burns Code Ed.1972) provides that if a mistake is made, the probate court may modify or vacate its order if an interested party applies within one year.

173 P.2d 776 (1946); *Parr v. Davison*, 146 Wash. 354, 262 P. 959 (1928).

Title to the 30 acres was not involved in the mother's estate as administered in the Cass Circuit Court. Accordingly, Kile's claim was not barred by principles of res judicata. Nor is she estopped from asserting the title which vested in her as a result of her father's devise. Therefore, and because title in Apple's mother by adverse possession was not an issue in the trial of this cause, the judgment is affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.